William R. Geiler, J.
Application by respondent Board of Education to stay arbitration proceedings commenced by claimant Associated Teachers of Huntington.
The respondent and claimant entered into a contract on June 10, 1968 with reference to the employment of teachers in the Union Free School District No. 3 within the Town of Huntington, Suffolk County.
The contract includes a procedure for the submission of grievances to arbitration and defines a grievance in article II A(l) in the following terms: “A grievance is a claim which involves the interpretation and application of the terms and provisions of this contract.”
The contract also includes a provision for giving notice of termination of employment to nontenure teachers. This provision is contained in article XVIII, section A, paragraph 3 of *444 the agreement and provides: “ Non-tenure teachers will he notified of termination of employment not later than March 1st, except that for the third year, the teacher will be notified not later than January 1.”
The respondent, on May 1, 1969, sent a notice of termination of employment to a Samuel Grenz, a nontenure teacher in his initial year of employment and a member of the claimant teacher’s association. This notice was admittedly sent two months after the contractual requirement that all such notices be sent no later than March 1, 1969.
The claimant filed a demand for arbitration in accordance with article II of the subject contract on the ground that there has been a violation of article XVIII, section A, paragraph 3 of the contract dealing with notice of termination of employment.
The respondent contends that this particular provision, governing the timing of termination notices to nontenure teachers, is outside the scope of the grievance procedure and thus not subject to arbitration. The respondent board, in support of this contention, cites article XVIII, section C of the contract, which provides: “No tenure teacher shall be disciplined, reprimanded, reduced in rank or compensation, suspended, demoted, transferred, terminated or otherwise deprived of any professional advantage without just cause. In no case shall this be done publicly unless so requested by the teacher. Any such action, including adverse evaluation of teacher performance or a violation of professional ethics asserted by the Board or any agent thereof, shall be subject to the grievance procedure set forth in this Agreement, provided that in the case of a non-tenure teacher, termination shall not be grievable.”
The respondent board also implies that article XVIII, section A, paragraph 3 is contrary to certain statutory provisions of the State of New York and therefore is void.
Does the subject contract preclude arbitration with reference to the procedure used interminating the employment of a nontenure teacher?
The respondent, in arguing that the language of the contract precludes arbitration, relies primarily on section G of article XVIII, which deals not with the procedure to be followed in terminating employment of nontenure teachers, but with the right of the school board to terminate a tenure teacher’s employment for just cause. This particular provision, as indicated above, also provides that the board may terminate the employment of a nontenure teacher without having to demonstrate just cause in an arbitration proceeding.
*445 There is no question that a nontenure teacher, under paragraph C of article XVTII, is prohibited from challenging in arbitration the grounds for termination of employment and the claimant readily admits this fact. However, this prohibition, in of itself, does not mean that a nontenure teacher is barred from challenging the ‘ ‘ procedure ’ ’ used in terminating employment. Otherwise, section A of article XVIII would be meaningless and there is no language in the contract which declares or implies that this section dealing with notice of termination of employment of a nontenure teacher was meant to be moot and unenforceable. The court has been unable to find any language in the broad arbitration provisions set forth in article II of the subject contract which would imply that the procedure used in the termination of a nontenure teacher was prohibited from being the subject of an arbitration proceeding.
It has been the established law in this State that questions concerning arbitrability are to be resolved in arbitration and not in a court, unless there is a clear and unquestionable exclusion from arbitration. This basic rule of law was clearly enunciated by the New York State Court of Appeals in the case of Matter of Long Is. Lbr. Co. (Martin) (15 N Y 2d 380) in the following language at pages 384-385: “ It is now a familiar rule that, where a labor agreement contains an arbitration provision, the presumption is that questions of arbitrability are for the arbitrator * * * In the last analysis, arbitrations are the result of agreements between the parties and they draw their essence from those agreements. It is only where the parties have employed language which clearly rebuts the presumption of arbitrability * * # that the matter may be determined by the courts. In the absence of such unmistakably clear language * * *■ the matter is sent to the arbitrator for his determination on the merits.”
The court finds that there is no prohibition against submitting the question of the procedure used in terminating employment of a nontenure teacher and the best that can be said for respondent’s position herein is that there is doubt as to whether the provisions in question may or may not be arbitrable. In such circumstances, the question of arbitrability must be submitted to an arbitrator for resolution as indicated by the United States Supreme Court in Steelworkers v. Warrior & Gulf Co. (363 U. S. 574, 582-583): u An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of *446 an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.”
Are school boards prohibited by law from agreeing to provide a notice of termination to nontenure teachers? Is such an agreement unenforceable?
The respondent board has advanced the argument that the notice of termination provision for nontenure teachers is, even though freely agreed to by them, void on the following basis:
1) Section 3012 of the Education Law does not require notice by March 1, and therefore any such requirement in the subject contract is illegal. .
2) The arbitration provisions under the subject contract, if they cover the subject grievance, is broader than section 684 of the General Municipal Law and is therefore void.
Section 3012 of the Education Law provides in part:
££ 1. Teachers * * * shall be appointed by the board of education * * * for a probationary period of three years. The service of a person appointed to any of such positions may be discontinued at any time during such probationary period *jfe jc,
“ 2. * * * Each person who is not to be recommended for appointment on tenure, shall be notified by the superintendent of schools in writing not later than sixty days immediately preceding the expiration of his probationary period.”
There can be no dispute that this section allows termination of employment of a nontenure teacher at any time during his probationary period without a hearing. It is also undisputable that this section does not forbid providing a nontenure teacher with prior notice of termination. In fact, subdivision 2 of section 3012 mandates 60 days’ notice of termination where the nontenure teacher’s employment is to be terminated after the full three-year period. The statute, by requiring notice of termination ‘£ not later than sixty days ’ ’ before termination, impliedly permits notice before that day. Certainly this statutory provision does not bar earlier notice.
The respondent seems to imply that any provision which is broader than the statutory benefits is invalid. In other words, the statutory minimum according to respondent’s reasoning is also the maximum. Is a contract of employment invalid because it provides for a wage in excess of the minimum wage set by the State of New York? The position of the respondent is without legal foundation or rational basis.
There is also no legal basis for respondent’s contention that section 684 of the General Municipal Law prohibits the negotiation of a better or broader grievance procedure. In fact, sec *447 tion 684 was never intended to provide the exclusive machinery for the resolution of grievances concerning public employees, as can be seen from the following language contained in section 684 of the General Municipal Law: ‘ ‘ Each government which, on or before October first, nineteen hundred sixty-three, has not established and does not thereafter maintain a two stage grievance procedure for all its employees shall, acting through the chief executive officer of each government establish and administer a basic grievance procedure for the employees of such government in accordance with the provisions of this section and section six hundred three of this article.”
Thus, under this section, a Board of Education is free to adopt its own grievance procedure.
Certainly, after 1967, not only is the subject type of arbitration permissible, but it was mandated by the public policy of this State. In 1967 the Taylor Law was enacted (L. 1967, ch. 392) as section 200 et seq. of the Civil Service Law and the public policy of this State was set forth as follows in section 200 of the Civil Service Law (as amd.): “ The legislature of the state of New York declares that it is the public policy of the state and the purpose of this act to promote harmonious and cooperative relationships between government and its employees * * * These policies are best effectuated by * * * encouraging such public employers and such employee organizations to agree upon procedures for resolving disputes ”.
This court would be remiss if it stayed the arbitration proceeding herein which is not prohibited by statute and which is in accordance with the public policy of this State. The application is denied.