John C. Marbach, J.
Petitioners apply for an order pursuant to CPLB 7503 (subd. [a]) compelling arbitration of a dispute *997 involving the dismissal of a school nurse during the term of her probationary status.
The application is denied.
On May 2, 1969, the parties entered into a collective bargaining agreement. This agreement contained the following provisions relevant to this action:
“ 2. Definitions
‘ ‘ Two types of grievances or differences shall be covered by the provisions of this article.
“ The first refers to differences or grievances which may arise because of an alleged violation, misinterpretation, or inequitable application of the provisions of this agreement between the Board of Education and the Dobbs Ferry Teachers Association in effect at the time of the alleged grievance. Such grievances shall be referred to as 1 agreement grievances ’.
“ The second type refers to grievances or differences which may arise in connection with employment by the Board of Education but which are not covered by any other article of this agreement. Such differences or grievances shall be referred to as ‘ personal grievances ’.
“ 9. Arbitration
“ (a) An ‘ agreement grievance ’ which was not resolved at the level of the Board of Education may be submitted to arbitration by the complainant jointly with the Association in the case of a complaint initially filed by an individual complainant or by the Association in the case of a complaint originally brought by the Association. Such action must be initiated within 20 calendar days of the decision by the Board by notifying the Board, in writing, that the grievance will be submitted to arbitration.”
Article II of the agreement provides:
” RIGHTS OF THE BOARD OF EDUCATION
“1. Both parties recognize that the Board has, whether exercised or not, the right, responsibility and prerogative to direct the operation of the public schools in Union Free School District No. 3, Town of Greenburgh, in all aspects authorized by statute. These rights, responsibilities and prerogatives are not subject to delegation in whole or in part, except that the ■same shall not be exercised in a manner inconsistent with or in violation of this agreement and/or applicable statutes.”
No one questions the validity of the arbitration clause in this agreement. Whether the arbitration clause in this agreement was designed for and does in fact include the facts of this dispute is the real question. Stated another way, must this *998 particular dispute be arbitrated? In order to determine this, the facts must be understood.
On May 26, 1970, the Board appointed Mrs. Lehman as a school nurse. The letter provided :
“ As you know, the post of School Nurse (BN), is classified as a Civil Service position. Consequently, your initial probationary period is for 8 weeks or until November 3, 1970. During that period you cannot be removed from your position except by preferred charges. It is our belief that for your position, a longer probationary period is necessary. Therefore, please be advised that the probation period is extended for a maximum of 18 additional weeks, to March 9, 1971.
6 ‘ At the end of the initial 8 weeks, or during the additional 18 weeks, the probationary period can be terminated at any time by written notice to you that you are considered to have successfully completed such probation or that your services are being terminated.”
By letter dated November 3, 1970, Mrs. Lehman’s probationary status was terminated effective November 13, 1970. The operative effect of these two letters is the basis of the underlying dispute. Petitioner argues that her dismissal by the board violates Civil Service Law and civil service regulations. It is petitioner’s contention that this would violate article II of the agreement referring to applicable statutes, thereby creating an ‘ ‘ agreement grievance ’ ’ which under the terms" of the agreement must be arbitrated.
Respondents contend that the question of whether this dispute is arbitrable is, in the first instance, a question that is to be determined by the court. Respondent further argues that this is not an “ agreement grievance” requiring arbitration. The court will first treat the threshold question of the court’s function in this type of case.
I
Both Federal (Steelworkers v. American Mfg. Co., 363 U. S. 564 [1960] ; John Wiley & Sons v. Livingston, 376 U. S. 543 [1964] ; Atkinson v. Sinclair Refining Co., 370 U. S. 238 [1962] ; International Union of Elec., Radio & Mach. Workers v. General Elec. Co., 407 F. 2d 253 [2 Cir., 1968] ; International Assn. of Meat & Frost Insulators etc. Local 66 v. Leona Lee Corp., 434 F. 2d 192 [5th Cir. 1970]) and State law (Matter of Howard & Co. v. Daley, 27 N Y 2d 285 [1970] ; Matter of Fitzgerald [General Elec. Co.], 19 N Y 2d 325 [1967] ; Matter of Long Is. Lbr. Co. [Martin], 15 N Y 2d 380 [1965] American Silk Mills Corp. v. Meinhard-Commercial Corp., 35 A D 2d 197) make *999 it clear that it is the function of the court to determine whether the parties to the collective bargaining agreement have agreed to submit specific issues to arbitration. As Mr. Justice Bbekwah" has stated in his concurring opinion in Steelworkers v. American Mfg. Co. (supra, pp. 370-371): “ To be sure, since arbitration is a creature of contract, a court must always inquire, when a party seeks to invoke its aid to force a reluctant party to the arbitration table, whether the parties have agreed to arbitrate the particular dispute. In this sense, the question of whether a dispute is ‘ arbitrable ’ is inescapably for the court” Our own Court of Appeals has recently reaffirmed this when it recognized that the court has the limited judicial function to determine whether the recalcitrant party did agree to arbitrate the grievance. (Matter of Howard & Co. v. Daley, supra, p. 289.)
This court does, therefore, have jurisdiction over the question of the arbitrability of the dispute.
n
Is petitioner’s dismissal during her probationary period an agreement grievance which the court must determine is arbitrable? The court must look to the wording of the agreement to decide this question.
Under the agreement, an agreement grievance is an alleged violation, misinterpretation, or inequitable application of the provisions of the agreement. An agreement grievance which cannot be resolved at the level of the Board of Education may be submitted to arbitration. Arbitration, therefore, is not mandatory. The agreement also provides that the rights of the Board of Education shall-not be exercised in a manner inconsistent with or in violation of this agreement and/or applicable statutes. The inclusion of the italicized phrase in the agreement is the predicate for petitioners’ claim that this dispute violates a phrase contained in the collective bargaining agreement and, therefore, is an arbitrable agreement grievance.
This case does not involve a labor arbitration agreement in. the industrial sector such as is found in Steelworkers v. American Mfg. Co. (supra) or Matter of Howard & Co. v. Daley (supra) or Matter of Long Is. Lbr. Co. (Martin) (supra) or Matter of Otis Elevator Co. v. (Carney) (6 N Y 2d 358), although there is a similarity between the reservation of right to the Board of Education in this case and the reservation of rights to management in Steelworkers (supra, p. 565, n. 2). This litigation does involve a so-called ‘1 minor ’ ’ dispute in public employment labor contracts. State rather than Federal *1000 law controls since there are no interstate elements present. Labor arbitration agreements must be distinguished from commercial arbitration agreements and, in the opinion of the court, labor arbitration agreements involving the public sector must be distinquished from labor arbitration agreements in the private sector.
There is a presumption in favor of arbitration in labor arbitration agreements in the private sector as expressed in a long line of cases starting with Steelworkers (supra) and including the most recent pronouncement of our Court of Appeals in Matter of Howard & Co. v. Daley (supra). The presumption of arbitrability is rebuttable by language which, indicates that the parties intended otherwise. (Matter of Long Is. Lbr. Co. [Martin], supra ; City of Auburn v. Nash, 34 A D 2d 345 [4th Dept., 1970].) Although the parties in this case did not provide in the agreement that this dispute is not arbitrable (City of Auburn v. Nash, supra, p. 348), this court cannot find, after considering the total grievance portions of the agreement, that such an omission is fatal to the respondents’ contention that this dispute is not an arbitrable matter. Howard is relied on by petitioners, but it is distinguishable from the case at bar. The arbitration provision in Howard involved the application or interpretation of any provision of the agreement, or concerning any term or condition of employment, or otherwise. This was a broad arbitration clause which the parties specifically agreed to. In the instant action, the parties agreed only to arbitration of agreement grievances, not personal grievances. There is no broad all-disputes arbitration provision, and the parties specifically excluded those matters which concern the right of the board to run the district.
It is- this right to run the district that is at the heart of this dispute. Petitioner is a nontenured school nurse whose probationary status is governed by the provisions of the Civil Service Rules of Westchester County (rule 10). It should be noted that these rules are not statutes, and respondents’ argument that the dispute does not involve a statutory violation has considerable validity. There are, however, more important grounds on which the case must be decided.
While there is language in Steelworkers (supra, p. 573) which would indicate that a court may, in limited cases, decide the merits of the threshold question to determine if a dispute is arbitrable, this court is not deciding the merits of this dispute pursuant to the admonitions contained in Steelworkers, Long Is. Lbr. Co. and Howard. However, it is the finding of this *1001 court that the collective bargaining agreement specifically establishes, in the personal grievance procedure, provisions for treating a dispute affecting the status of a single employee appointed by and under the sole authority of the board. Furthermore, the court finds that the parties have agreed to preserve the board’s power to run the district in the very same paragraph that petitioners are relying on to turn the decision-making process over to the arbitrator.
In rejecting petitioners’ contention that this is an agreement grievance, the court rejects the argument that this involves a violation, misinterpretation or inequitable application of the agreement. It does involve a right, personal to Mrs. Lehman and to Mrs. Lehman alone, and a violation of her rights, if any violation does exist, can still be determined in administrative and judicial proceedings. Therefore, this decision does not leave petitioner Lehman without a remedy; it simply says her remedy is not to be determined by arbitration.
This case is distinguishable from the disputes in Matter of Associated Teachers of Huntington (Board of Educ., Union Free School Dist. No. 3) (60 Misc 2d 443 [Sup. Ct., Suffolk County, Geiler, J.]) and Central School Dist. No. 1. v. Litz (60 Misc 2d 1009 [Sup. Ct., Onondaga County, Simons, J.]). The Union Free School Dist. No. 3 case defined (p. 443) a grievance on article II A (1) as “ a claim which involves the interpretation and application of the terms and provisions of this contract ”. The Fits case defined (p. 1010) a grievance in article No. 3 as ‘ ‘ any breach in or infringement upon the negotiated agreement ”. In both of these cases, the parties did not provide for two separate grievance procedures for agreement and personal grievances. There is language in both of these cases which could be susceptible to an interpretation favorable to petitioner, but each agreement is unique in its own right and the court finds that the agreement has a provision for this dispute and has reserved to the board its right to run the school district, which must of necessity include the determination of probationary status of nontenured nurses. This last point requires some further elaboration.
The issue of whether it is for the board or the arbitrator to determine this question involves conflicting public policy considerations. Issues of public policy applicable to these types of contracts, as expressed in the Taylor Law (Civil Service Law, § 200 and following) and the cases interpreting the policy provisions (Matter of Civil Serv. Employees Assn. v. Helsby, 31 A D 2d 325, affd. 24 N Y 2d 993 ; 32 A D 2d 131, affd. 25 N Y *1002 2d 842 ; City of Auburn v. Nash, 34 A D 2d 345 [4th Dept., 1970]) must be considered in the context of public policies articulated in Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington (36 A D 2d 753 [2d Dept., 1971]) and the cases cited therein. The Taylor Law policies and some recent case law would favor arbitration of grievances while the Second Department has held that certain areas of school grievances involve matters which should not be delegated to an arbitrator for determination.
Petitioner attempts to label this as an agreement grievance subject to arbitration by simply alleging a volation of a statutory right. The plain intent of article II of the agreement concerning the rights of the Board of Education would seem to preserve to the board the right to direct the operation of the public schools in the district, and it is just this type of dispute which would seem to involve what the language of the section intends and what the courts have considered to be a matter for the school board and not the arbitrator to determine. (Board of Educ. of Union Free School Dist. No. 3, supra.) In this ease, the Appellate Division, Second Department, stated that it was the majority’s opinion: “ (1) that a Board of Education is better qualified to decide whether a teacher in its employ should be dismissed for incompetency or misconduct than an arbitrator or arbitrators; and (2) that since the dismissal of a teacher for incompetency or misconduct is a matter of vital importance to the public, and especially school children . who would be affected thereby, the eontractural delegation to an arbitrator or arbitrators of the power to determine whether a teacher should be dismissed for incompetency or wrongdoing is void as contravening major public policy (cf. Matter of Aimcee Wholesale Corp. [Tomar Prods.), 21 N Y 2d 621, 626-629 ; Norwalk Teachers’ Assn. v. Board of Educ. of City of Norwalk, 138 Conn. 269 ; Matter of Michelman, 5 Misc 2d 570 ; Matter of Diamond, 80 N. Y. S. 2d 465, affd. 274 App. Div. 762 ; Matter of Swislocki [Spiewak], 273 App. Div. 768) ”. (See, however, cases cited in 54 Cornell L. Rev., p. 129 and following for a different interpretation of these policy questions.)
There would appear to be even greater reasons to deny arbitration in this case which involves not a teacher but a nurse on probationary status and involving a dismissal as of right, not a dismissal for cause based upon incompetency or misconduct.
This is a complex and developing area in which the applicable case law and conflicting public, policies occasion considerable *1003 difficulty in resolving a specific problem. The industrial labor agreements are different from the public labor agreements because of the statutory mandates and prohibitions which affect the public sector (see Kheel, 67 Mich. L. Rev. 931 et seq.). An agreement in the public sector which provides for arbitration must always be drafted with an eye toward the powers and duties delegated by law. Some agreements specifically provide for this; see Tremblay v. Berlin Police Union (108 N. H. 416 [1968]), where the agreement provisions were by specific language subordinated to New Hampshire State law; see also Local 1226 v. City of Rhinelander (35 Wis. 2d 209). In light of the expense (one day arbitration costs can run as high as $1,175) and time involved, the court suggests that when parties do agree to arbitrate, they specifically exclude those matters which are not arbitrable. (Matter of Long Is. Lbr. Co. [Martin], supra ; City of Auburn v. Nash, supra.)