Bertram Harnett, J.
A Great Neck teacher claims back
pay on the grounds that she was not given appropriate service credit for two previous years’ substitute teaching experience when hired full time in September, 1967. The Great Neck Board of Education seeks here to stay the arbitration of that claim demanded under their collective bargaining agreement of July 1, 1971.
Thé board recognizes the validity of the agreement to arbitrate, but contends that (1) as a matter of interpretation, the agreement to arbitrate does not apply retroactively to a 1967 hiring; and (2) since under section 3813 of the Education Law three months’ notice is required from the time of accrual of a claim against a Board of Education, the claim sought to be arbitrated is barred by such a “Limitation of Time” as provided by CPLR 7502 (subd. [b]).
I. DOES ARBITRATION APPLY TO THE DISPUTE?
A. PROVISIONS OP THE AGREEMENT
The collective bargaining agreement specifically defines in article XVTII, paragraph B (1) the meaning of a “ grievance ” that may be submitted to the board, initially, for *1063 resolution according to prescribed procedures: ‘ ‘ any claimed violation, misinterpretation or inequitable application of existing laws, Board policies, rules, procedures, regulations, administrative or rules governing conditions of professional service to the extent provided by law; or of the provisions of this agreement ”.
The agreement further provides in article XVIII, paragraph D (5.4), that if the grievant is not satisfied with the outcome of the grievance procedures, “ the grievance may be submitted to an arbitrator for hearing and recommendation, by written notice to the other party ”.
B. THE EFFECT OF TIME OF HIRING
If the disputed hiring had taken place during the term of the agreement, there would be little doubt that the claim was arbitrable. See, article XXXIX, paragraph D of the agreement, entitled “ Experience Credit Upon Appointment ”. But, since the hiring took place in 1967, before the agreement was signed, is the dispute nonetheless arbitrable?
The answer necessarily depends upon an interpretation of the agreement and the intention of the parties as to disputed hirings which predate that agreement. In such instances where the resolution of a dispute depends “ primarily on a reading and construction of the agreement * * * it is for the arbitrators to decide what the agreement means and to enforce it according to the rules of law which they deem appropriate in the circumstances ”. (Matter of Exercycle Corp. [Maratta], 9 N Y 2d 329, 334; Matter of De Laurentiis [Cinematografica], 9 N Y 2d 503.) Where labor and management have openly agreed to submit disputes to arbitration, the courts will effectuate their intention and not interrupt the orderly process of agreed grievance resolution. (Matter of Terminal Auxiliar Maritima [Winkler Credit Corp.], 6 N Y 2d 294; Matter of Marchant v. Mead-Morrison Mfg. Co., 252 N. Y. 284, 298; Steelworkers v. Warrier & Gulf Co., 363 U. S. 574 [1960]; City of Auburn v. Nash, 34 A D 2d 345; Civil Service Law, § 209, subd. 2.)
Under CPLR 7501, the court does not consider whether the association’s claim is “ tenable ” or “ otherwise pass(es) upon the merits of the dispute ”. As long as a dispute of some kind does exist under the agreement, and there are “ permissible differences of interpretation” (Matter of De Laurentiis v. Cinematografica, supra, p. 509), the arbitrator, by agreement of the parties, should decide the issues. The policy in *1064 favor of arbitration, particularly in labor disputes, is compelling because the arbitrative process with its special procedures and personnel is well suited to facilitate the fair resolution of employment impasses. (See Long. Is. Lbr. Co. [Martin], 15 N Y 2d 380.) The resulting flexibility in arbitration helps both labor and management to meet changing needs. (City of Auburn v. Nash, supra.)
The emerging rule then in determining the arbitrability of a particular dispute in a contract calling for arbitration is whether the agreement in “ carefully drafted words ” clearly and unambiguously excludes arbitration for that instance. (Central School Dist. No. 1 v. Litz, 60 Misc 2d 1009, affd. 34-A D 2d 1092; Matter of Board of Educ. v. Deer Park Teachers’ Assn., 66 Misc 2d 794; Communications Workers of Amer. v. New York Tel. Co., 327 F. 2d 94, 96 [2d Cir., 1964]; Matter of Associated Teachers of Huntington [Board of Educ.], 60 Misc 2d 443.) However, the board in its petition does not point to any controlling provision of the agreement prohibiting arbitration of the retroactivity question, but assumes, incorrectly, that since prior disputes are not specifically mentioned in the agreement, the issue is not arbitrable. (See Matter of Blum Folding Paper Box Co. [Baften], 27 N Y 2d 35.)
There appears to be no provision in the agreement which excludes the arbitration of pre-existing disputes. The provisions concerning arbitration, grievances and experience credit do not address this specific issue. The only two references to “retroactivity” (arts. XXXIX [D] and XXXVII) do not exclude or even deal with arbitration. The arbitrability of this issue will therefore hinge upon a reading and construction of the entire agreement and should be ruled upon by the arbitrator in the first instance. Moreover, this dispute as to correct pay entitlement covers pay earned before and after July 1, 1971. Accordingly, it seems most sensible for one convenient forum to deal with the single issue which spans the entire employment circumstance.
H. TIMELINESS OF CLAIM
There remains, however, the board’s second contention that arbitration should be stayed because when the demand for arbitration was served on February 25, 1972, the teacher’s claim for retroactive salary benefits would have been ‘ ‘ barred by limitation of time [were] it asserted in a court of the state”. (CPLB 7502 subd. [b]). Subdivision 1 of section 3813 of the Education Law provides that ‘ ‘ no action or spe *1065 cial proceeding ’ ’ can be maintained against a school district or board of education unless a verified claim is first presented to the governing body within three months after the claim accrues.
It is undisputed that the teacher and the association, while participating in the prescribed stages of grievance procedures, including the submission of written grievances, did not simultaneously file a verified claim pursuant to section 3813 of the Education Law. The board now seeks to avail itself of that failure to file, notwithstanding the board’s binding agreement to use the grievance procedures set forth fully in the collective bargaining agreement without any requirement that a section 3813 verified claim be submitted, and its participation in those procedures without objection in this case.
A. EFFECT OF THE TAYLOR LAW
In negotiating and reaching a binding agreement by collective bargaining, the board and association have given substance to the so-called ‘ ‘ Taylor Law ’ ’ enacted in 1967, article 14 of the Civil Service Law, which recognizes such a procedure ‘ ‘ to promote harmonious and cooperative relationships between government and its employees” (§ 200). The Legislature specifically empowered public employers 11 to recognize employee organizations for the purpose of negotiating collectively in the determination of, and administration of grievances arising under the terms and conditions of employment ”. (Civil Service Law, § 204, subd. 1; emphasis added.) Further, where an employee organization has been recognized, the board “ is required to negotiate collectively with such employee organization in the determination of, and administration of grievances arising under the terms and conditions of employment”, and to “ enter into written agreements” with the employee representative. (Civil Service Law, § 204, subd. 2; emphasis added.) The Legislature has attached exceptional importance to the process of collective bargaining and adherence to the agreements made with public employers, in return for the drastic prohibition against public employees engaging in strikes. (See Civil Service Law, § 210.)
The vital underlying principle of the Taylor Law is to eliminate public employees’ strike possibilities by recognizing, and in fact commending public employees and employers to, the collective bargaining process, and by making the agreements reached absolutely binding on both sides, particularly those provisions relating to the ‘ ‘ administration of griev *1066 anees ”. (See Matter of Helsby v. Board of Educ., 34 A D 2d 361.) Moreover, arbitration itself is recognized by statute as a viable method of resolving major disputes and issues in negotiation. (Civil Service Law, § 209, subd. 2.)
B. NOTICE PROVISIONS IN THE AGREEMENT
The board here availed itself of the collective bargaining process and has agreed to detailed and elaborate grievance procedures which do not include the submission of a section 3813 verified claim. There are four successive “ stages ”. In Stage 1, the teacher initially discusses the grievance with his or her supervisor and, if that discussion does not end the dispute, submits a written grievance to the supervisor. Stage 2 provides for an appeal in writing to and a hearing before the Superintendent of Schools. Stage 3 permits a further appeal to and hearing before the Board of Education. Stage 4 is arbitration. Each successive stage has a time limit for the submission of written grievances and appeals and the rendering of decisions, and the board is protected against protracted delays by the absolute bar against the employee proceeding further if an appeal is not filed within the specified time limitations. Most critical, all steps are governed by the overriding notice requirement: “No written grievance will be entertained as described below, and such grievance will be deemed waived unless a written grievance is forwarded at the first available stage within sixty (60) school days after the teacher knew or should have known of the act or condition on which the grievance is based ’ ’. (Art. XVIII, par. D [2].)
The consequence of an employee failing to meet the time dead-lines is a waiver of, or bar to, the grievance. The procedure is intended to insure that each grievance is raised in a timely manner so that the board can investigate the matter while witnesses and records are fresh.
The board does not contend that Mrs. Hyman failed to comply with any of the procedures or time limitations contained in the collective bargaining agreement. In point of fact, the record indicates that Mrs. Hyman became aware of her entitlement in October, 1971,- initiated the Stage 1 supervisory review with a written grievance dated November 2, 1971, apparently proceeded through to the Stage 3 review before the board, and was thereafter denied a retroactive pay increase without the board in any way questioning the timeliness of the procedures used or demanding a section 3813 veri *1067 fied claim. It is only on the proverbial courthouse steps that the board first finds the section 3813 argument.
Section 3813 is clearly intended to afford a school district the opportunity to investigate the claims of all kinds to obtain evidence promptly while it is still readily available, and to adjust or make payment before litigation is commenced. (State of New York v. Waverly Cent. School Dist., 53 Misc 2d 843; Newburgh Nursery v. Board of Educ., 41 Misc 2d 997; Winbush v. City of Mount Vernon, 306 N. Y. 327, 333.) However, the collective bargaining agreement by its “time limit” provision, including the waiver of grievances not timely raised, serves these very same purposes, albeit by the substitution of different time specifications, review procedures and written notice requirements. Under the critical power conferred under article 14 of the Civil Service Law, the board has by agreement substituted certain grievance procedures and time limitations, for those otherwise imposed by statute. (See Quintero v. Long Is. R. R., 55 Misc 2d 813, affd. 31 A D 2d 844; Matter of Johnson v. Board of Educ., 33 A D 2d 647.)
C. POLICY
The court also notes that the collective bargaining process in public employment would be undermined by holding otherwise. The public employee negotiating for fair grievance procedures without reference to section 3813 and later relying upon the letter of the agreement is prejudiced by the imposition of requirements outside the agreement. Here, for example, the notice provision in the agreement for submission of a written grievance within 60 days “ after the teacher knew or should have known of the act or condition on which the grievance is based ”, contains an important protection to a teacher who is initially unaware, reasonably, of his claim. This protection would be nullified de facto by the 3813 filing requirement 1 ‘ three months after the accrual of such claim ’ ’.
While the court believes subdivision 1 of section 3813 primarily intends a protection against “outside” claims, the decision here is not based upon the teacher’s claim being an “ internal ” teacher salary dispute (cf. Todd v. Board of Educ., 272 App. Div. 618, affd. 297 N. Y. 873; Kinner v. Board of Educ., 6 A D 2d 204; Thompson v. Board of Educ., 11 Misc 2d 603), nor upon the mere presence of an agreement to arbitrate. (Matter of Board of Educ. [Heckler Elec. Co.], 7 N Y 2d 476; Matter of Board of Educ. [Hanover Ins. Co.], 22 A D 2d 936, affd. 16 N Y 2d 673.) Rather, it is the presence of *1068 the complete collective bargaining agreement, between the board and association with its own detailed time limit requirements, recognized by article 14 of the Civil Service Law as the functional means for resolving labor disputes in the public sphere, which compels the result. As the court in Board of Education v. Deer Park Teachers’ Assn. (66 Misc 2d 794, 796) held: “ The Board of Education has within its authority and is mandated to reach a collective bargaining agreement concerning ‘ the administration of grievances ’ arising under the terms of employment of their public employees. The section of the instant agreement providing for such administration of grievances is whole and exclusive and is not limited by the operation of section 3813 of the Education Law ’ ’.
This is not to say that every collective bargaining agreement between a school and employee organization automatically waives section 3813, but only that in this case the board under article 14 has the power to, and did, substitute claim and notice requirements which are binding.
Accordingly, the board’s application to stay arbitration is denied, and the petition dismissed.