George Beisheim Jr., J.
The petitioner, Nyack Board of Education, has brought this special proceeding pursuant to article 75 of the CPLR for a judgment staying the arbitration commenced by the respondent, Nyack Teachers Association, of an alleged grievance between the parties pertaining to the written policy (Policy 5118) adopted by the petitioner in September, 1973, wherein the petitioner stated, “ It is the policy of the Board of Education to accept no non-resident students ”, subject to certain exceptions prescribed therein.
The respondent instituted a grievance proceeding alleging that the unilateral adoption of this policy by petitioner represented a change in the working conditions of the teachers in violation of the existing contract between petitioner and respondent.
The contract between the parties was entered into on December 13, 1972, and covered the period July 1, 1972, to June 30, 1975. The pertinent provisions to the present controversy are the definition of a grievance, article XX, section B, subdivision 1, which reads: “ A Grievance is a claim by any teacher or group of teachers in the negotiating unit based upon any event or condition affecting their terms and conditions of employment, including, but not limited to, any claimed violation, misinterpretation, misapplication or inequitable application of law, of rules or regulations having the force of law, or. of this agreement.” And article XX, section C, stage 4, subdivision d, which states: ‘ ‘ The arbitrator shall have no power or authority to make any decision which requires the commission of an act prohibited by law or which is violative of the terms of the Agreement, nor can he add to, subtract from or modify any terms of the Agreement.”
The respondent alleges that since at least 1929 there has existed in the school district the practice of permitting children of nonresident teachers employed in the district to attend the Nyack schools tuition free. It contends that the change in this practice affected conditions of employment of the teachers and that petitioner violated the contract by unilaterally changing such practice without prior consultation with respondent, and that respondent is entitled to arbitrate the alleged contractual violation it sets forth in its grievance.
*118 Petitioner argues that the arbitration should be stayed because (1) “ The demand for arbitration calls for the commission of an act prohibited by law”, and (2) “ The grievance is not arbitrable under the agreement ’ ’.
The law pertaining to petitioner’s second point is well established. In the absence of illegality or contravention of public policy, the courts have ruled that arbitration should not be denied ‘ ‘ unless it can be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute ”. (Steelworkers v. Warrior & Gulf Co., 363 U. S. 574, 582-583.) To like effect is Steelworkers v. American Mfg. Co. (363 U. S. 564) and Steelworkers v. Enterprise Corp. (363 U. S. 593). The New York rule is in accord, at least in disputes over contracts of employment. (Matter of Associated Teachers of Huntington v. Board of Educ., Union Free School Dist. No. 3, 33 N Y 2d 229; Long Is. Lbr. Co. [Martin], 15 N Y 2d 380; Board of Educ. of Cent. School Dist. No. 1 v. Cracovia, 36 A D 2d 851; Matter of Associated Teachers of Huntington v. Board of Educ., Union Free School Dist. No. 1, 60 Misc 2d 443.)
This court is inclined to the opinion that the policy of the Board of Education pertaining to the admissibility or non-admissibility of nonresident students is not a matter covered by a teachers’ employment contract. That, however, is a matter for the arbitrator, not the courts, to decide, in the absence of an illegality being involved. Accordingly, the court refuses to stay the arbitration on this ground.
The more difficult question to resolve is petitioner’s contention that the arbitration should be stayed because it calls for the commission of an act prohibited by law. An issue of illegality is available for preliminary submission to the court (as distinguished from the arbitration) to one resisting' an arbitration (Matter of Allied Van Lines [Hollander Express & Van Co.], 29 N Y 2d 35; Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 N Y 2d 621; Matter of Kramer & Uchitelle [Eddington Fabrics Corp.], 288 N. Y. 467; Matter of National Equip. Rental [American Pecco Co.], 35 A D 2d 132, affd. 28 N Y 2d 639). This court believes that the learned court in the case of Board of Educ. of Cent. School Dist. No. 1, Town of Clarkstown v. Cea (Sup. Ct., Rockland County, Index No. 4538/70) overlooked the holdings of the appellate courts, supra, that the issue of illegality is a threshold question to be decided by a court rather than a matter to be decided by the arbitrator. As the court stated in Durst v. Abrash (22 A D 2d 39, 41, affd. 17 N Y *119 2d 445): “an agreement to arbitrate subject to a claim of infirmity for illegality in the principal agreement involves a preliminary question to be determined by the court and not by the arbitrators.”
Petitioner claims that should it allow the nonresident children of teachers to attend Nyack schools tuition free while other nonresidents are charged (as is the case where nonresident children are admitted under the “ exceptions ” set forth in Policy 5118), such action would violate the “equal protection” clause of section 2 of article I of the New York State Constitution, comparable to the Fourteenth Amendment of the United States Constitution.
It is no answer to that contention, as arguéd by. respondent, that counsel for respondent at a board meeting in August, 1973, expressed a view contrary to petitioner’s present contention. Willingness to correct error, if error there be, is commendable, rather than otherwise. Nor should the alleged fact that petitioner had a policy or practice for 45 years of permitting children of nonresident teachers to attend Nyack schools tuition free (a policy which is denied by the petitioner’s president in his letter to respondent of October 4, 1973) have any bearing upon the court’s decision. Many customs, practices and policies in effect for many years have been prohibited in recent years by the courts as violative of the Fourteenth Amendment (Eisenstadt v. Baird, 405 U. S. 438; Reed v. Reed, 404 U. S. 71; Turner v. Fouche, 396 U. S. 346).
Petitioner cites two opinions of the New York State Comptroller, Opinion 874 of 1968 (24 Opns. St. Comp., 1968, p. 819) and Opinion 941 of 1962 (18 Opns. St. Comp., 1962, p. 427), in support of its contention that it would be illegal to charge tuition to nonresident children whose parents are not teachers while admitting nonresident children of teachers tuition free. These opinions are not binding on the court and are only as persuasive as their logic appeals to this court. In Opinion 941 of 1962, the Comptroller stated, in part: “ To admit the nonresident children of the teacher tuition free, while thus charging other nonresidents, would be to discriminate unfairly against certain members of the class of nonresidents within the meaning of the State Constitution Article I § 11, the ‘ Equal Protection ’ clause.”
Opinion 874 of 1968 stated, in part:
“ A school district may admit nonresident students tuition free (1 Op St Compt 423 (1945).
*120 “ A prior opinion (18 Op St Compt 427 (1962), dealt with the question of whether a school district could admit nonresident children of a teacher in the district tuition free. We stated:
* ‘ A school district may admit nonresidents tuition free but may not discriminate among the class of nonresidents.
“ It is this Department’s opinion that entering-into a contract with the teachers calling for such tuition privileges does not in any way alter the unlawful discrimination problem raised in our prior opinion (18 Op St Compt 427 supra).
11 The school district may not waive tuition for one group of nonresidents.”
This court is constrained to agree with the State Comptroller. The analogy to the decision in People v. Kraushaar (195 Misc. 487) is persuasive. There, the court held that a village properly could vary the parking fees in a village ordinance between residents and nonresidents of the village, but it could not set a different fee between different groups of nonresidents. Here, the Nyack School Board may not place the nonresident children of Nyack schoolteachers in a preferred or privileged status over other nonresident schoolchildren. To do so would be to violate the “ equal protection ” clause of the State Constitution.
. Not only would the action for which respondent argues be unconstitutional, it would be unfair to other teachers. If the argued for policy be, as argued by respondent, one of giving nonresident teachers with children attending the Nyack schools a “ fringe benefit ”, such nonresident teachers with children would be receiving a greater benefit or u emolument ” than nonresident teachers or resident teachers with no children, and also would be unfairly preferred over resident teachers with children who pay taxes, or rent to their landlord who pays taxes, to support the education of Nyack children.
The court, therefore, grants petitioner’s application for judgment staying the arbitration.