P. Raymond Sirignano, J.
This is a proceeding pursuant to CPLR 7503 (subd [b]) to vacate a demand for arbitration and for an order staying said arbitration between petitioner and respondent, upon the grounds that (1) no valid agreement has been made providing for the arbitration of respondent’s claim; (2) the claim does not constitute a bona fide grievance arbitrable under the terms of the agreement; (3) the performance which is the subject of the demand is prohibited; (4) the arbitrator does not have jurisdiction under the terms of the agreement to grant the relief sought; and (5) the matter sought to be arbitrated represents major public policy that has been vested by the Legislature of the State of New York in the jurisdiction of the school board.
In support of the application, petitioner contends that it and the respondent have entered into a collective bargaining agreement which covers the period July 1, 1973 to June 30, 1976, which agreement, among other things, provides a schedule of compensation for teachers who are given extra duty assignments in cocurricular activities and interscholastic athletics.
The voters in the school district authorize the budget appropriations for such activities based upon amounts submitted to them by the board of education.
The 1974-1975 cocurricular budget was finally approved by the voters upon its third submission on or about August 16, 1974. This third proposed budget called for a reduced appropriation for interscholastic and cocurricular activities by the elimination and reduction of several activities, thereby reducing the need for certain extra duty assignments. Accordingly, the board did not make certain extra duty assignments for the school year 1974.
Petitioner claims that all cocurricular and extra duty assignments that have been authorized have been made, and *899 that all of the teachers are being compensated for such work in accordance with the terms of the agreement.
Petitioner contends further that two teachers in the school district who personally have not been affected by the cut in extra duty assignments have instituted a grievance, which grievance has been denied at the various appellate stages, as required by the terms of the agreement, upon the ground that the petitioner board acted within its statutory authority in not making the assignments complained of.
The respondents have demanded arbitration of the said grievance, which application petitioner contends should be denied.
Respondent, in answering the petition, contends that the individual grievants, as officers of the respondent union, had a responsibility to bring this class action where the wrong complained of affected a group of teachers who were members of the said union.
Respondent contends further that the petitioner has raised no issue under CPLR 7503 (subd [b]) which would act as a bar to arbitration, and since the matter is presumptively arbitrable, the application to stay arbitration should be denied.
It appears that respondent is seeking to compel the pe-. titioner to make extra duty assignments and to fill "positions” for certain teachers employed by petitioner with respect to cocurricular activities and interscholastic teams which were eliminated by the board or reduced for the 1974-1975 year.
Petitioner has alleged, among other things, that there is no agreement to arbitrate the dispute claimed by respondent; the claim does not constitute a bona fide grievance arbitrable under the terms of the agreement, and that the arbitrator lacks jurisdiction.
The agreement entered into by the parties has defined the term "grievance” in article XXVII, section 1 as follows:
"A 'grievance’ is a complaint by any teacher or group of teachers in the bargaining unit concerning an alleged misinterpretation or misapplication of an express provision in the agreement.”
In the instant case, it appears that the grievance is with regard to the elimination of certain extra-curricular and cocurricular activities such as interscholastic teams, drama groups and other extra-curricular activities, to which no assignments have been made by petitioner as a result of the *900 reduction of its program. Respondent contends that the board should make the extra duty assignments with respect to the extra-curricular and cocurricular activities which were eliminated and/or reduced by the board for the 1974-1975 school year.
A review of the agreement itself indicates that no express provision is made therein with regard to extra-curricular or cocurricular activities except that it provides under article VI headed "Professional Compensation” subdivision F as follows:
"F. Teachers involved in extra duty assignments as set forth in Schedule D which is attached to and incorporated in this agreement shall be compensated in accordance with the provisions thereof. These assignments will be open to Lakeland teachers provided that they are available and qualified to perform the same.”
Thus it is clear that the agreement itself only refers to compensation for any assignment made, not for the assignment itself. In the instant grievance there is no claim that the teachers who have been assigned have not been compensated. The agreement entered into between the parties also provides under article XXVII, section 7 (d):
"(d) The arbitrator shall limit his decision strictly to the interpretation or application of the express provision of this agreement submitted to him and he shall be without power or authority to make any decision;
"(1) contrary to, or inconsistent with, or modifying or varying in any way, the terms of this agreement, or of applicable law, or rules or regulations having the force and effect of law;
"(2) involving Board discretion or Board Policy under the provisions of this agreement, under Board rules or regulations, under regulations having the force and effect of law, or under applicable law;
"(3) limiting or interfering in any way with the powers, duties and responsibilities of the Board or the Superintendent of Schools under the Board’s rules or regulations, applicable law, and rules and regulations having the effect of law.”
It is thus clear that the arbitrator may not make any determination which would interfere with the powers and duties of the board whose function it is to determine what activities both cocurricular and extra-curricular the students should engage in, and which of such activities should be *901 eliminated, if such elimination is required for budgetary and other reasons.
While generally the presumption of arbitrability extends to the issue as to who must decide whether there is an arbitration question (8 Weinstein-Korn Miller, NY Civ Prac, § 7501.20 or § 7501.30) where, as in the instant case, the power of the arbitrator is limited and the issues sought to be arbitrated are not included in the agreement, the court will not evade its obligations as set forth in CPLR 7503 (subd [b]) to determine whether an agreement to arbitrate has been made. (See Lehman v Dobbs Ferry Bd. of Educ., 66 Misc 2d 996.)
The grievance and arbitration clauses in the agreement must include those issues which are to be the subject of the arbitration, and the court must determine if the disputes in question are encompassed in the agreement. (Matter of Exercycle Corp. [Maratta], 9 NY2d 319; Cole v Mostel, 27 AD2d 721; Matter of Lipsky [Fashion Art Corp.]. 23 AD2d 775; Lehman v Dobbs Ferry Bd. of Educ, supra.)
Accordingly, since it appears that there is no valid agreement herein which provides specifically for arbitration of the respondent’s claim, and since it also appears that the arbitrator lacks jurisdiction to grant the relief sought, the court concludes that the demand for arbitration should be vacated and arbitration permanently stayed.
Motion to vacate the demanded arbitration is granted.