No. 13705

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

WIBAUX EDUCATION ASSOCIATION,
affilitated with Montana Education
Association,

Plaintiff and Appellant,

-vs-

WIBAUX COUNTY HIGH SCHOOL et al.,

Defendants and Respondents.

Appeal from: District Court of the Seventh Judicial District,
Honorable L. C. Gulbrandson, Judge presiding.

Counsel of Record:

For Appellant:

Hilley and Loring, Great Falls, Montana
Emilie Loring argued, Great Falls, Montana

For Respondents:

R. W. Heineman argued, Wibaux, Montana

Submitted: September 19, 1977

Decided: JAN 18 1978

Filed: JAN 18 1978

_Thomas J. Kearney_ Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court:

Plaintiff Wibaux Education Association appeals from an order of the District Court, Wibaux County refusing to compel defendants Wibaux County High School and School District No. 6, and its Trustees, to submit a teaching dispute to arbitration.

The Wibaux High School Board of Trustees (School Board) employed Samuel R. Deckert for the school years of 1973-1974 and 1974-1975. In the spring 1975, Deckert was still a "nontenured" teacher under section 75-6103, R.C.M. 1947, which provides that tenure is achieved when a teacher has been offered and has accepted a contract for the fourth consecutive year of employment. Deckert was the President of the Wibaux Education Association and as a member was covered under a collective bargaining agreement negotiated between the Association and the School Board.

On March 31, 1975 the School Board notified Deckert in writing that it had passed a resolution to terminate his services at the end of the 1974-1975 school year. Pursuant to that portion the collective bargaining agreement relating to nontenured teachers, Deckert requested a hearing upon the board's decision to terminate his contract. A hearing was held. On April 14, 1975 the School Board reaffirmed its decision to terminate Deckert.

Deckert then followed grievance procedures under Article V of the agreement and requested the chairman of the Association's Professional Rights and Responsibility Committee to submit the dispute to arbitration. On May 19, 1975 the chairman made a written request for arbitration to the School Board, but the School Board did not reply. On August 12, 1975 an additional demand was made to arbitrate but the School Board again did not reply. Acting

as the bargaining agent for Deckert the Association filed suit in District Court to compel the School Board to arbitrate. The court denied the request and this appeal followed.

This case comes to us on a certified statement of the record and an agreed statement of facts. The sole issue is whether Deckert's claim of improper nonrenewal is subject to arbitration.

The School Board claims Deckert was accorded all the procedural rights to which he was entitled under the contract and by Montana statutes, and that an agreement to arbitrate did not and could not include arbitration of the School Board's sole right to not renew Deckert's teaching contract. The Association contends the issue must go to an arbitrator and that an arbitrator has the ultimate right to overrule the School Board in its nonrenewal decision. It argues the School Board, as the result of the give and take of collective bargaining, has agreed to arbitrate this issue.

At the time the contract was negotiated, the school fiscal year 1974-1975, the only statute relating to rights of a non-tenured teacher was section 75-6105.1, R.C.M. 1947. It provided that the school board must give notice to all nontenured teachers by April 1st of each year, if it does not intend to renew their contracts. A failure to do so resulted in automatic renewal of their contracts. It was not required that the school board have just cause for nonrenewal of their contracts. Nor does the statute, as amended in 1975, presently require just cause for nonrenewal of a contract of a nontenured teacher.

In the 1974-1975 contract the parties included an Article which established mandatory evaluation procedures for nontenured teachers before they could be considered for nonrenewal. Article

VII,A. A second provision provided the hearing steps which must be followed if requested by a nontenured teacher whose contract was not renewed. Article VII,B. If requested, the School Board was required to hold a hearing as to the reasons why the nontenured teacher's contract was not renewed. The Article provides no remedies for failure of the school officials to comply with the hearing procedures. In any event, the Association agrees the school officials followed the proper evaluation procedures and the School Board was requested to and did conduct a proper hearing.

The issue was joined when the School Board, after its hearing, reaffirmed its decision to terminate Deckert. He filed a request through the Association to submit the issue of his nonrenewal to arbitration. The Association labeled Deckert's nonrenewal a "grievance" and accordingly filed a demand for arbitration under the grievance procedure. The School Board refused to arbitrate the issue of nonrenewal and the Association then filed a complaint in District Court seeking an order to arbitrate. It was denied, and this appeal followed. We must determine whether the per se nonrenewal of a nontenured teacher's contract constitutes a "grievance" and thus is subject to the binding decision of an arbitrator.

Per se nonrenewal of either a tenured or nontenured teacher is not expressly covered in the contract. Nonrenewal is only mentioned under Article VII which is confined to the evaluation procedures and hearing procedures for nontenured teachers. Under Article V, section A, a "grievance" is defined thusly:

"A grievance may be defined as a claim based
upon an event or condition which affects the
conditions or circumstances under which a
teacher works, allegedly caused by misinterpre-
tation or inequitable application of established
district policies, statutes, or the terms of a
negotiated contract."

The Association offers no explanation of how this specific definition applies to the per se nonrenewal of a nontenured teacher. The Association broadly asserts that the "grievance" definition "would clearly cover a claim that a teacher's contract was improperly non-renewed." We can only conclude that since all "grievances" must be arbitrated under the contract, the Association believes that if nonrenewal is stated as a "grievance" it must therefore be arbitrated.

Following this supposition to to its logical conclusion would mean that in all cases involving nonrenewal of a nontenured teacher's contract, if the teacher and Association demand it, the nonrenewal decision must be arbitrated. This would mean that in all cases the arbitrator and not the school board would make the determination of whether or not to renew the contract of a nontenured teacher.

It is clear that arbitration under Article VII would be available on a limited basis if the "grievance" was that the school officials or School Board failed to comply with either the evaluation or hearing procedures outlined in subsections A and B. Exactly what relief an arbitrator could grant, we are not prepared to say, and it is not necessary to our decision here for it is agreed the evaluation procedures and hearing procedures were properly followed.

Here, it appears the Association is seeking to imply a "just-cause" provision into Article VII of the agreement. As stated before, this clause covers only the evaluation and

- 5 -

hearing procedures. Although the Association concedes the School Board has the statutory right to hire and nonrenew the contracts of nontenured teachers, it contends the School Board has "bargained away" this right by placing the ultimate decision with an arbitrator. However, where the agreement does not mention the subject of who makes the ultimate nonrenewal decision, we cannot so easily declare that the School Board has "bargained away" its authority to the arbitrator.

The hiring and nonrenewal of teachers in Montana is recognized as a function that belongs to the school boards. School boards have contitutional status under Article X, Section 8, 1972 Montana Constitution, which provides:

> "The supervision and control of schools in each
> school district shall be vested in a board of
> trustees to be elected as provided by law."

At the time the agreement here was negotiated the legislature had given school boards the exclusive right to hire and terminate teachers. Chapter 59, Title 75 covered the powers and duties of school boards. Section 75-5933, R.C.M. 1947, provided in relevant part:

> "As prescribed elsewhere in this title, the
> trustees of each district shall have the power and
> it shall be its duty to perform the following duties
> or acts:
>
> "(1) employ or dismiss a teacher, principal or
> other assistant upon the recommendation of the
> district superintendent, the county high school
> principal, or other principal as the board may deem
> necessary, accepting or rejecting such recommendation
> as the trustees shall in their sole discretion deter-
> mine, in accordance with the provisions of the school
> personnel chapter of this title * * *." (Emphasis added.)

It is undisputed here that the appropriate high school personnel recommended nonrenewal of Deckert's contract. It is clear also that this power was given only to the School Board.

- 6 -

Chapter 61, Title 75, Revised Codes of Montana, covered the rights, duties and obligations of teachers, superintendents and principals. Sections 75-6115 through 75-6128, R.C.M. 1947 (since repealed) were declared to be the "Professional Negotiations Act for Teachers". Section 75-6119 specifically provided that in negotiations between teachers and the school board that:

> "* * * The matters of negotiation and bargaining for agreement shall not include matters of curriculum, policy of operation, selection of teachers and other personnel, or physical plant of school or other facilities * * *." (Emphasis added.)

It is plain from section 75-6119 that the legislature intended selection and concomitant right of nonrenewal to be exclusively the province of the school boards. These laws manifest a clear intent by the legislature to limit the areas of negotiation.

The Association argues that despite such statutes, it is within the power of school boards to confer more contractual rights to teachers than they are entitled to by the statutes. See for example: Danville Board of School Directors v. Fifield, (1974), 132 Vt. 271, 315 A.2d 473; Teachers of Huntington v. Board of Education, District No. 3, (1969), 303 N.Y.S.2d 469; Board of Education, Yonkers City School District v. Yonkers Federation of Teachers, (1976), 40 N.Y. 2d 268, 353 N.E.2d 569; Board of Education v. Philadelphia Federation of Teachers, Local No. 3, (1975), 464 Pa.92, 346 A.2d 35; Milberry v. Board of Education of School Dist. of Phil.,(1976), 467 Pa. 79, 354 A.2d 559. Certainly there are areas within which the teachers may legitimately bargain for greater protection for its members than is provided by statute. But here the legislature has specifically excluded selection of teachers from the negotiation process. None of the cases cited by the Association hold that this can be done where specifically prohibited by statute. The Association has not challenged the constitutionality of the statutes.

It can be argued of course, that section 75-6119 prohibits only the selection of teachers from being a subject for negotiation, but does not prohibit the termination or nonrenewal of teachers from being a subject for negotiation. If that were so, it would have been a simple matter for the legislature to so declare. Furthermore, section 75-5933 states that it is within the "sole discretion" of the school board to "employ or dismiss a teacher".

It is clear that nonrenewal of nontenured teachers was not covered by the agreement or allowed by the law then in effect. (See sections 59-1601 through 59-1617, R.C.M 1947, for the law presently covering collective bargaining for teachers and public employees in general.)

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 8 -