SAG HARBOR UNION FREE SCHOOL DISTRICT, Petitioner, v ROBERT D. HELSBY et al., Respondents.

Third Department, November 24, 1976

*Smith, Finkelstein, Lundberg, Baisley & Yakaboski (Francis J. Yakaboski* of counsel), for petitioner.

*Martin L. Barr (Jerome Thier* of counsel), for Robert D. Helsby and others, respondents.

*Guazzo, Silagi, Craner & Perelson, P. C. (Stephen A. Perelson* of counsel), for Gerard P. Geohringer and another, respondents.

*James R. Sandner* for Pierson Teachers Association, respondent.

MAHONEY, J. Gerard Goehringer and Frank Lizewski, probationary teachers in the Sag Harbor Union Free School District, were dismissed by the local board of education on June 30, 1974. The teachers and their collective bargaining representative, Pierson Teachers Association, filed an improper practice charge against the school district alleging that they had been discharged because of their participation in union activities and in the prosecution of certain grievances, areas protected from public employer interference pursuant to the provisions of subdivision 1 of section 209-a of the Civil Service Law (pars [a] and [c]). A hearing officer, in an order dated June 18, 1975, found that the dismissals had been motivated by the high school principal's "animus" toward the teachers because of their engagement in union activities. The Public Employment Relations Board (PERB) affirmed the order which directed that the teachers be offered reinstatement with back pay and that the school district cease and desist from discriminatory acts toward members of the teachers association. The order affirmed specifically stated that reinstatement should not be construed as conferring tenure status or in any way impeding the public employer from evaluating the performance of the teachers "uninfluenced by any role they have played or may play in the protected activities of the Association's grievance committee."

The contention of the school district that PERB is without authority to review the termination of nontenured teachers, where cause for such action may exist, as here, and that to do so is in contravention of the applicable sections of the Education Law (§ 3013, subd 2; §§ 3019-a, 3031) is without merit. A public employer, pursuant to the cited provisions of the Education Law, may terminate a probationary teacher for good reasons or bad reasons (Education Law, § 3013; *Board of Educ. of Chautauqua Cent. School Dist. v Chautauqua Cent. School Teachers Assn.,* 41 AD2d 47) so long as it does not do so for an illegal reason, such as the exercise of rights protected by

subdivision 1 of section 209-a (pars [a] and [c]) of the Civil Service Law (Taylor Law). As stated by PERB in its decision: "Thus, the question before the hearing officer and us is not whether Goehringer and Lizewski could have been dismissed on the basis of their performance, but rather whether they were dismissed because of their active participation as members of the Association's Grievance Committee." We agree. Therefore, our review is confined to a consideration of whether there is substantial evidence in the record to support PERB's conclusion that Goehringer and Lizewski were terminated because they engaged in protected activities.

So far as pertinent, subdivision 1 of section 209-a of the Civil Service Law states that, "It shall be an improper practice for a public employer * * * deliberately (a) to interfere with * * * public employees in the exercise of their [right to * * * participate in any employee organization of their choosing] * * * (c) to discriminate against any employee for the purpose of encouraging or discouraging membership in, or participation in the activities of, any employee organization".

A full and sympathetic reading of the record before the hearing officer clearly reveals that while it was the duty of the District Superintendent to make a recommendation concerning tenure to the board, his recommendation with respect to Goehringer and Lizewski was greatly, if not completely, the result of High School Principal Bangs' urgings that both be dismissed. Bangs did not deny that he urged both the District Principal and District Superintendent to recommend dismissal of the two teachers. While Bangs denied that he was motivated by the fact that his control of discipline at the high school had been repeatedly challenged by the association's grievance committee, of which the two subject teachers were the only nontenured high school members, this issue was largely based on issues of credibility, the resolution of which, if not patently erroneous, cannot be disturbed. Next, the record shows that Bangs was upset when the association filed written grievances with the board concerning his handling of student disciplinary matters, and his displeasure was manifested when he chastised the two teachers for being parties to the complaint. Next, the hearing officer credited the testimony of Goehringer and rejected that of Bangs that the latter told the former that it would be unwise for a probationary teacher to file a grievance or sign his name to a grievance. There are also several other incidents in the record where Bangs warned

other nontenured teachers that it would be foolish to get involved in grievance matters.

In sum, the record reveals more than several instances where High School Principal Bangs attempted to impede either directly or by innuendo the statutory right of Goehringer and Lizewski to freely participate in the activities of the union of which they were members. Since an agency or hearing officer must be accorded broad powers to appraise, correlate and evaluate facts *(Matter of Holland v Edwards,* 307 NY 38, 45), the findings of such agencies or officers should not be disturbed if supported by a rational basis. There can be no doubt that the hearing officer's finding of antiunion animus as the motivation for the two teachers' dismissal, affirmed by PERB, has substantial support in the record. Therefore, the order should not be disturbed *(Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck,* 34 NY2d 222, 232).

Therefore, we find that the order reinstating the two teachers to a nontenured status with back pay less moneys earned, with leave to the school district to evaluate their performances uninfluenced by any of their union activities to be proper and salutary *(New York Inst. of Technology v State Div. of Human Rights* (40 NY2d 316).

The determination should be confirmed, and the petition dismissed, with costs.

LARKIN, J. (dissenting). I respectfully dissent.

The majority hold and I agree that a public school district, pursuant to the Education Law, may terminate a probationary teacher for any reason so long as it does not do so for illegal reasons. If the sole reason for the dismissal of those teachers were their union activities, I would agree with the majority, for it is clear that a teacher cannot be dismissed for the exercise of his rights under the Taylor Law (Civil Service Law, art 14).

The PERB hearing officer, however, found in addition to the finding of "animus" mentioned by the majority, "some credible evidence in the record to support * *· * criticism of their teaching techniques and attitudes". The majority thus have held that PERB can order reinstatement of nontenured teachers dismissed by the board when one of the reasons for dismissal is union activity, even though other valid reasons exist. I disagree.

PERB ordered that the teachers be reinstated with back pay, with leave to the Board of Education to "evaluate their performance uninfluenced by any of their union activities". Presumably, the teachers will go back to work and the board will re-evaluate their performances. The board, having heretofore denied any antiunion bias, can do little more than subjectively state, in the directive language of PERB, that the next decision will be "uninfluenced by any of their (teachers) union activities". If the board should thereafter dismiss the teachers, or either one of them, on "credible evidence * * * to support * * * criticism of their teaching techniques and attitudes", it is quite reasonable to assume that the teachers will immediately return to PERB with the same complaint, on the same grounds, as in their first successful application; namely, that the board was influenced by their union activities. It would thereupon be more than likely that PERB, on the same set of facts, without any change, would reaffirm its first decision. The obvious conclusion is that these teachers cannot now be dismissed unless a new factual basis acceptable to PERB is introduced as evidence. I find no statute intending or providing for such broad appellate oversight by PERB.

I would adopt and apply to this case the observations made by the Court of Appeals, in *New York Inst. of Technology v State Div. of Human Rights* (40 NY2d 316, 322) decided in July, 1976:

"The management of the university is primarily the responsibility of those equipped with the special skills and sensitivities necessary for so delicate a task. One of the most sensitive functions of the university administration is the appointment, promotion and retention of the faculty. It is for this reason that the courts, and administrative agencies as well, should 'only rarely assume academic oversight, except with the greatest caution and restraint, in such sensitive areas as faculty appointment, promotion, and tenure, especially in institutions of higher learning'. *(Matter of Pace Coll. v Commission on Human Rights of City of N.Y.,* 38 NY2d 28, 38; see, also, *Faro v New York Univ.,* 502 F2d 1229, 1231-1232.) As we said in *Pace College,* educational institutions 'are not "businesses" where employees are all fairly fungible unskilled or semiskilled workers', but are places where 'subjective judgments necessarily have a proper and legitimate role'. *(Matter of Pace Coll. v Commission on Human Rights of City of N.Y., supra,* p 38)."

In my view there is a strong correlation between the needs of those entrusted with the "delicate * * * task" of the administration of a university and those similarly charged with responsibility for the management of a public school district, such as the petitioner herein *(id.)*. Applying the standards contained in *New York Inst. of Technology v State Div. of Human Rights (supra),* to the facts of the instant case, I am led to the inevitable conclusion that the respondents and the majority of this court have failed to exercise "the greatest caution and restraint" by interfering with the petitioner in its attempt to exercise its duties with regard to the status of its faculty members *(id).*

The determination should be annulled.

SWEENEY, J. P., KANE and HERLIHY, JJ., concur with MAHONEY, J.; LARKIN, J., dissents and votes to annul in a separate opinion.

Determination confirmed, and petition dismissed, with costs.