BOARD OF EDUCATION OF CHAUTAUQUA CENTRAL SCHOOL DISTRICT, Respondent, *v.* CHAUTAUQUA CENTRAL SCHOOL TEACHERS ASSOCIATION, Appellant.

Fourth Department, February 23, 1973.

*Fudeman & Renaldo* (*Emanuel Tabachnick* of counsel), for appellant.

*Brandt & Laughlin, P. C.* (*Stephen Teret* of counsel), for respondent.

GOLDMAN, P. J. The Chautauqua Central School Teachers Association (Teachers Association) appeals from an order which stayed arbitration between it and the Board of Education of the Chautauqua Central School District (School Board).

The respondent School Board has recognized the appellant Teachers Association as the exclusive negotiating agent for the teachers employed by respondent. Pursuant to the requirements of sections 200 to 214 of the Civil Service Law of New York State (generally known as the Taylor Law), respondent and appellant have entered into an agreement with respect to the hours, wages, terms and conditions of employment of the teaching personnel of the Chautauqua Central School District. The contract includes a procedure for the submission of grievances to arbitration and defines a grievance in article IV (§ II, subd. 2.1) as follows: " 2.1 A Grievance is a claim by any teacher or group of teachers in the negotiating unit based upon any event or condition affecting their welfare and/or terms and conditions of employment, including, but not limited to, any claimed violation, misinterpretation, mis-application or inequitable application of law, rules or regulations having the force of law, pertaining to this agreement."

A detailed four-level grievance procedure is prescribed under section V of article IV of the agreement. If the teacher and/or the Association is not satisfied with the decision at Stage 3, the grievance may be submitted to arbitration within 15 school days of the decision at Stage 3.

Barry Graham was employed by the respondent District and had not yet been granted tenure when his probationary employment was terminated by the respondent on November 22, 1971. Mr. Graham, a member of the appellant Teachers Association, filed five grievances pursuant to the agreement between respondent and appellant. The first grievance dated November 16, 1971 claimed as the nature of the grievance a 30-day dismissal notice.

The other four grievances were dated December 6, 1971, and charged the School Board with violations of the following provisions of the agreement between the Board and the Association.

1. Section C of article VII which provides: "If the Administration plans to change a teacher's assignment, notification of this change should be made as early as possible and no later than the first week in June (except under extenuating circumstances)."

2. Section A of article X which provides that: "A teacher will be evaluated each semester during the probationary period."

3. Section B of article X provides that: "Any additional material other than school or legal records will be reviewed, initialed, and dated by the teacher before being placed in the teacher's file."

4. Section I of article XV which provides that: "All observations will be followed by either a written or oral critique within three school days after the observation."

In all five grievances the settlement requested was reinstatement and/or repayment of any loss of earnings.

The parties could not resolve their differences in the first three steps of the grievance procedure outlined in article IV of the agreement, and appellant therefore caused to be served on respondent a notice of intention to arbitrate dated January 2, 1972. On January 31, after rejecting the appellant's demand for arbitration, the respondent served upon the Association's president and cochairman a notice of petition and a petition for a judgment pursuant to CPLR 7503 (subd. [b]), staying the arbitration between the parties.

On April 5, 1972 Special Term granted respondent's request for a stay of arbitration. In its memorandum decision the court found that the agreement between the parties contained no provision regarding arbitration of the question of dismissal of teachers, whether they were tenured or nontenured. He concluded that "As there is no provision in the agreement between the petitioner and respondent requiring arbitration of the question of teacher dismissal, the respondent has no basis for demanding arbitration of the dismissal of Barry Graham."

The Taylor Law requires a public employer to negotiate with certified employee organizations in the determination of the terms and conditions of employment and to enter into contracts with such employee organizations (Civil Service Law, § 204, subd. 2; *City of Auburn* v. *Nash*, 34 A D 2d 345). It has been held that a school district has the power to contract to arbitrate disputes (*Central School Dist. No. 1* v. *Litz*, 60 Misc 2d 1009,

1011–1012; affd. 34 A D 2d 1092; see *Matter of Dormitory Auth.* [*Span Elec. Corp.*], 18 N Y 2d 114, 118; *City of Auburn* v. *Nash, supra*).

Once a valid agreement providing for arbitration has been entered into, any controversy arising between the parties to the contract which is within the compass of those provisions must proceed to arbitration (*Matter of Exercycle Corp.* [*Maratta*], 9 N Y 2d 329, 334). The only exceptions where a court will enjoin arbitration are: (1) where there is fraud or duress in the inception of the contract; (2) where there is no bona fide dispute between the parties; (3) where the performance which is the subject of the demand is prohibited by statute; or (4) where a condition precedent to arbitration under the contract has not been fulfilled. If the issue is solely one of construction or interpretation, it is for the arbitrators and not the courts to decide (*Matter of Exercycle Corp.* [*Maratta*], *supra,* pp. 334–335). It is an accepted rule that where a labor agreement contains an arbitration provision, there is a presumption that questions of arbitrability are for the arbitrator (*Matter of Long. Is. Lbr. Co.* [*Martin*], 15 N Y 2d 380, 384). The presumption of arbitrability applies with the same force to questions of substantive arbitrability as it does to questions of procedural arbitrability (*id.,* p. 384). The Court of Appeals has held that the court's function is limited to finding that a dispute, whether tenable or not, does in fact exist (*id.,* pp. 384–385). This rule has been specifically applied to a contract providing for arbitration of grievances executed by a school district and a teachers' association. (*Central School Dist. No. 1* v. *Litz, supra.*) If a dispute exists, the arbitrator and not the court, must examine the merits of the dispute itself.

" It is only where the parties have employed language which clearly rebuts the presumption of arbitrability, e.g. by stating that an issue either as to procedure or as to substance is *not* to be determined by arbitration, that the matter may be determined by the courts. In the absence of such unmistakably clear language, as here, the matter is sent to the arbitrator for his determination on the merits." (*Matter of Long Is. Lbr. Co.* [*Martin*], *supra,* p. 385.) This principle was recently affirmed in *Matter of Howard & Co.* v. *Daley* (27 N Y 2d 285, 289, 290) ; and in *Board of Educ.* v. *Grand Is. Teachers' Assn.* (67 Misc 2d 859, affd. 38 A D 2d 669). See, also, *Steelworkers* v. *Warrior & Gulf Co.* (363 U. S. 574, 582–583).

The CPLR provides that an agreement to submit a controversy to arbitration is enforceable without regard to the justicia-

ble character of the controversy and further provides that the court should not consider " whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute ". (CPLR 7501.) An application to stay arbitration may be granted only if a valid agreement has not been made or has not been complied with, or if the claim sought to be arbitrated is barred by the Statute of Limitations (CPLR 7503, subd. [b]; 7502, subd. [b]). Thus, the role of the courts is extremely limited when considering an application to stay arbitration.

As was the case in *Grand Island* (*supra*) the Chautauqua School Board contends that no real purpose can be served by arbitration because no bona fide dispute exists. It reasons that although the grievances allege a failure to comply with certain provisions of the contract, the real purpose of the grievances is to challenge the dismissal of the probationary teacher. The Board asserts that the arbitrator would have no authority to review the dismissal of the teacher, since the authority to dismiss vests exclusively with the Board. The Board contends that this right may not be circumvented by arbitration.

In *Grand Island* (*supra*) the court found that " it is not the termination of employment of the probationary teachers in question for which arbitration is here sought, but rather the alleged violation by the Board and its agents of various contractual provisions contained in the various specified sections of articles IX and X of the Agreement " (*Grand Island,* 67 Misc 2d 859, 862, *supra*). The court concluded (pp. 862–863) that since the Teachers' Association as a party " may well have a viable interest in the Board's compliance with its contractual obligations concerning the subject matter in dispute ", the Grand Island Board's application to stay arbitration should be denied, and the parties directed to arbitrate those disputes concerning compliance or noncompliance by the School Board with the specified provisions of the agreement entered into between the Board and the Teachers' Association (*Grand Island,* 67 Misc 2d 862–863, *supra*).

Therefore, insofar as the grievances in the instant case pertain to the failure of the School Board to comply with particular provisions of the agreement, arbitration should be permitted to proceed (*Grand Island, supra; Matter of Associated Teachers of Huntington [Bd. of Educ., Union Free School Dist. No. 3,* 60 Misc 2d 443, 445). " Arbitration of a ' particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute ' (*Steelworkers* v. *Warrior & Gulf Co., supra,* at pp. 582–583) ''. (*Matter of Howard & Co.* v. *Daley,* 27 N Y 2d 285, 291.)

The grievances in question, however, request as relief the reinstatement of Mr. Graham. It is well settled that a '' nontenured teacher may be refused appointment without being given reasons therefor, or a hearing, and even despite the recommendation of a tenure appointment '' (*Legislative Conference* v. *Board of Higher Educ.,* 38 A D 2d 478, 481, affd. 31 N Y 2d 926). (See, e.g., *Matter of Pinto* v. *Wynstra* [22 A D 2d 914]; *Matter of Butler* v. *Allen* [29 A D 2d 799]; Education Law, §§ 2573, 3012, 3013.)

In *Legislative Conference* (*supra*), a Brooklyn College instructor, following an unanimous vote of the appointments committee not to recommend her appointment as an instructor for the academic year 1970–71, instituted grievance procedures alleging violations of by-laws and written policies of the Board of Education dealing with evaluation procedures. The court held that the arbitrator had exceeded the purview of his power in directing that the instructor be reappointed for the next academic year, where the effect of his action was to award the instructor tenure (*Legislative Conference,* 38 A D 2d 478, 479, *supra*). While acknowledging the broad power of the Board of Education to dismiss nontenured teachers, the court went on to accept the solution offered by the Board, which was to reappoint the instructor to a nontenured position for one year, during which time the Board would presumably comply with its evaluation procedures relating to appointment and reappointment to tenure-bearing positions; said procedures having been admittedly violated by the Board during the instructor's initial employment with the college.

In the instant case the School Board has not made a similar offer, but despite this difference we feel, as did the court in *Legislative Conference* (*supra*) that the only fitting solution is to reappoint Mr. Graham to his nontenured position if it is found that the School Board violated contractual obligations dealing with teacher evaluation procedures. Any relief granted by the arbitrator would be inadequate if Mr. Graham lost his job, since any arbitration won by the Teachers Association regarding School Board compliance with evaluation procedures would come too late to make Mr. Graham whole. The evaluation provisions of the agreement were intended to benefit all probationary teachers. The Board's power to dismiss without explanation should not be deemed a license to violate these bargained for rights due Mr. Graham.

As the court in *Legislative Conference* (*supra*) indicated, a decision to reappoint the probationary teacher in instances such as this would do no violence to the collective bargaining agreement and would in fact give appropriate recognition to any technical breaches of that agreement and to the public policy that "decrees the need for requisite competence before the achievement of tenure" (*Legislative Conference*, 38 A D 2d 478, 481, *supra*).

It must be noted that not all violations of the agreement would require reappointment of a dismissed probationary teacher. Only a failure of the Board to comply with a procedure that, if complied with, might permit a teacher to remedy any deficiencies in his or her performance shall be considered important enough to override the basic power of a school board to dismiss a probationary instructor without giving reasons therefor, or without holding a hearing. In the instant case, for example, the Board's alleged failure to notify Mr. Graham of a change in assignment by the first week in June would not, even if proved, constitute the type of violation which would justify his reinstatement. However, the alleged failure of the Board to follow all observations of Mr. Graham with a written or oral critique within three days of such an observation might well be ground for reinstating Mr. Graham, since the violation directly affects the teacher's ability to improve his work and ultimately secure a tenured position.

The grievances filed by the Teachers Association should proceed to arbitration. If the arbitrator finds that the School Board has failed to comply with any bargained-for procedures that directly affected Mr. Graham's ability to improve his performance and ultimately achieve tenure, the arbitrator would be empowered to reinstate Mr. Graham for a reasonable period of time, during which the School Board would presumably comply with the evaluation procedures enumerated in the agreement between the parties. In such event and if at the end of the prescribed period the evaluation procedures have been complied with, the School Board would then be free to exercise its basic power to determine the condition of competence of its probationary instructor and, if it so chooses, dismiss Mr. Graham.

The order should be reversed and matter remanded to arbitration.

WITMER, MOULE, CARDAMONE and SIMONS, JJ., concur.

Order unanimously reversed without costs and matter remitted for arbitration in accordance with opinion by GOLDMAN, P. J.