**John FRIES, Appellant,**

v.

**WESSINGTON SCHOOL DISTRICT NO. 2–4, Appellee.**

**No. 13160.**

Supreme Court of South Dakota.

Argued Nov. 19, 1980.

Decided July 8, 1981.

James Robbennolt of Duncan, Olinger, Srstka Lovald & Robbennolt, P.C., Pierre, for appellant.

Rodney Freeman, Jr., of Churchill, Manolis, Wheeler & Freeman, Huron, for appellee.

WOLLMAN, Chief Justice.

The South Dakota Department of Labor, Division of Labor and Management (department), ordered the Board of Education (board) of the Wessington School District (district) to reinstate John Fries (appellant) as a nontenured teacher for the 1977–78 school year and to purge appellant's personnel file of nineteen notes. The district appealed to the circuit court, which modified the order of the department and ordered only that appellant's personnel file be purged of the nineteen notes. We affirm.

Appellant was a nontenured teacher employed by the district during the 1975–76 and 1976–77 school years. During this time there was a negotiated collective bargaining agreement in effect between the district and the Wessington Education Association.[1] Section 7 of Article II of this agreement provided as follows:

> Each teacher shall have the right to review his own personnel file. No material derogatory to a teacher's conduct, service, character or personality shall be placed in his file unless the teacher has had an opportunity to read the material. The teacher shall acknowledge that he has read the material by fixing his signature on the actual copy to be filed.

Appellant was recommended for rehiring for the 1976–77 school year with qualifications. On January 20, 1977, the principal notified appellant that he intended to recommend to the superintendent of schools nonrenewal of appellant's contract for the 1977–78 school year. Appellant then requested an informal hearing with the principal, a list of the reasons for the recommendation, and an opportunity to examine his personnel file. Appellant was given an informal hearing with the principal and an opportunity to review his personnel file; however, the principal refused to give any reasons for his recommendation of nonrenewal.

Appellant reviewed his personnel file on February 4, 1977, and found eighteen notes therein that he had never seen before, none of which bore his signature. A nineteenth note was added sometime after this review. These notes played a part in the principal's recommending nonrenewal of appellant's contract to the superintendent.

The superintendent recommended to the board that appellant's contract not be renewed for the 1977–78 school year. Although the superintendent's recommendation was in part based upon the principal's recommendation, the superintendent testified that his recommendation would have been one of nonrenewal even if the principal had recommended renewal of appellant's contract. Based upon the superintendent's recommendation, the board decided not to issue appellant a contract for the 1977–78 school year.

Appellant filed a grievance with the district requesting a purging of the nineteen

---

1. This collective bargaining agreement was apparently negotiated pursuant to SDCL 3–18–2.

notes in his personnel file as well as reinstatement for the 1977–78 school year. The board denied appellant's grievance and appellant appealed to the department, which ordered the nineteen notes purged and appellant reinstated without tenure. The district appealed to the circuit court, which modified the department's order by deleting the provisions relating to reinstatement, leaving in effect only the provision requiring that the nineteen notes be purged.[2]

This case raises a question of first impression in this state: whether the department has the authority to order a school board to reinstate, without tenure, a nontenured teacher.[3] We hold that the department does have this authority.

Appellant contends that the department has the authority to reinstate a teacher under the provisions of SDCL 3–18–15.2, which reads as follows:

If, after following the grievance procedure enacted by the governing body, the grievance remains unresolved, except in cases provided for in § 3–6A–38, it may be appealed to the department of labor, which shall conduct an investigation and hearing and shall issue an order covering the points raised, which order shall be binding on the employees and the governmental agency.

■ By statute, school boards have general charge, direction, and management of the schools of the district, except as provided and limited by law. SDCL 13–8–39.[4] As a general statement, matters of teacher employment rest exclusively and absolutely with the school board. SDCL 13–10–2 provides as follows:

The school board shall have the power to employ personnel deemed necessary by the board and to define the duties and fix the compensation of each.

See also SDCL 13–8–39, 13–43–4 and 13–43–9.1. We have previously held that the decision whether to renew a teacher's contract is vested with the school board. *Moran v. Rapid City Area School Dist.*, 281 N.W.2d 595 (S.D.1979); *Mortweet v. Ethan Bd. of Ed., Davison Cty.*, 90 S.D. 368, 241 N.W.2d 580 (1976).

There are, however, certain limitations to a school board's authority in matters of teacher employment. Teacher tenure statutes are a limitation on the contracting power of a school board. *School Committee of Danvers v. Tyman,* 372 Mass. 106, 360 N.E.2d 877 (1977); Comment, *Procedural Due Process Protection of Liberty Interests in Probationary Teacher Re-Employment,* 22 S.D.L.Rev. 180, 197 (1977). A school board is required to give notice to a tenured teacher of intent not to renew that teacher's contract and must advise the teacher in writing of the reasons on which that intention is based. SDCL 13–43–9.1.[5] The pur-

2. The department and the circuit court also found that the Wessington School District had violated Section 4 of Article II of the collective bargaining agreement, which deals with formal teacher evaluation. Both the department and the circuit court concluded, however, that appellant had not filed a timely grievance with regard to this violation and therefore concluded that no remedy was appropriate. Appellant does not appeal from that part of the ruling.

3. The parties cite *Kierstead v. City of Rapid City*, 248 N.W.2d 363 (S.D.1976), and *General Drivers & Helpers U. v. Brown Cty.*, 269 N.W.2d 795 (S.D.1978), as South Dakota authority for resolution of this question. *Kierstead*, however, dealt with the reinstatement of a probationary city employee rather than the reinstatement of a teacher, and carries little precedential value in view of the fact that two Justices concurred specially and two Justices dissented. The *General Drivers* case held that the department could order reinstatement of

two deputy sheriffs, but dealt with a violation of South Dakota statute for discharge of employees for union activity. Accordingly, we do not find the holdings in *Kierstead* and *General Drivers* applicable here.

4. SDCL 13–8–39 provides:

As provided and limited by law, the school board shall have general charge, direction, and management of the schools of the district and control and care of all property belonging to it. The school board may levy taxes, borrow money, employ any necessary personnel, lease real and personal property, carry liability and other insurance, purchase all necessary books and equipment, purchase real property and erect necessary buildings for the operation of such schools.

5. These statutory provisions are applicable to a teacher who is in or beyond his or her third full term of employment in a school district. SDCL

pose of these statutes, commonly referred to as continuing contract provisions, is "to provide teachers security in employment and to prevent dismissal of a teacher without cause." *Collins v. Wakonda Ind. School Dist. No. 1*, 252 N.W.2d 646, 647 (S.D.1977) (footnote omitted). See also 22 S.D.L.Rev. 180 at 185.

In addition to the previous limitation, the school board must adopt an official teacher evaluation policy, SDCL 13–43–26, and all teachers must be evaluated and given notice of any deficiency during each semester of the first two full terms of employment. SDCL 13–43–9.1.[6]

■ The statutes are silent, however, with regard to reemployment of nontenured teachers. It is our conclusion that a school board may refuse to offer a nontenured teacher a contract without giving any reasons for doing so. *Hajduk v. Vocational Technical & Adult Ed. Dist. No. 13*, 356 F.Supp. 33 (E.D.Wis.1973); *Cohoes City Sch. Dist. v. Cohoes Tchrs. Ass'n*, 40 N.Y.2d 774, 390 N.Y.S.2d 53, 358 N.E.2d 878 (1976). The right of a school board to do so is not one that the board can bargain away by means of a collective bargaining agreement. *Wesclin Education Ass'n v. Board of Education*, 30 Ill.App.3d 67, 331 N.E.2d 335 (1975); *Cohoes*, supra.

The board contends that to grant the department the ability to order reinstatement of a probationary teacher would infringe upon the school board's ultimate authority to renew or not renew a nontenured teacher's contract. The board argues that the reinstatement of a teacher by the department would have the effect of eviscerating the absolute authority of a school board to make decisions relating to tenure. The board contends that since the legislature has made it clear that any teacher who is in or beyond the third full term of employment must be given tenure protection, the department cannot reinstate without tenure a teacher who will then be in or beyond his third full term of employment.

The courts of several states have addressed the issue presented by the case at bar. In *Board of Educ., Bellmore-Merrick Cent. High School Dist., Nassau County v. Bellmore-Merrick United Secondary Teachers, Inc.*, 39 N.Y.2d 167, 383 N.Y.S.2d 242, 347 N.E.2d 603 (1976), the New York Court of Appeals was faced with the question whether an arbitrator could order the temporary reinstatement of a probationary teacher as a remedy for breach of certain procedural guarantees afforded to such a teacher under a collective bargaining agreement. The court recognized that a school board could discharge probationary employees at will, but held that the arbitrator could order the temporary reinstatement of a teacher. The court stated:

As Presiding Justice Goldman remarked in sanctioning the remedy of temporary reinstatement in a case involving breach of similar provisions in a collective bargaining agreement, "[t]he evaluation provisions of the agreement were intended to benefit all probationary teachers. The Board's power to dismiss without explanation should not be deemed a license to violate these bargained for rights" (*Board of Educ. of Chautauqua Cent. School Dist. v. Chautauqua Cent. School Teachers Assn.*, 41 A.D.2d 47, 52, 341 N.Y.S.2d 690, 697).

*Bellmore-Merrick*, supra, 383 N.Y.S.2d at 245, 347 N.E.2d at 606. See also *Cohoes*, supra.

The Supreme Judicial Court of Massachusetts has adopted the position taken by the New York Court of Appeals. See *School Committee of West Bridgewater v. West Bridgewater Teachers' Association*, 372 Mass. 121, 360 N.E.2d 886 (1977); *School Committee of Danvers v. Tyman*, supra. We find the reasoning and analysis of the New York and Massachusetts courts persuasive.

---

13–43–9.1; *Carlson v. Hudson*, 277 N.W.2d 715 (S.D.1979).

**6.** See also SDCL 3–18–15.1, which requires that the school board establish grievance pro-

cedures that its employees may follow for prompt informal dispositions of their grievances.

■ It is our conclusion that a binding order of the department pursuant to SDCL 3–18–15.2 can be fashioned in such a manner to retain ultimate authority in a school board with regard to questions of nonrenewal of nontenured teachers and at the same time provide a remedy of temporary reinstatement without tenure to a nontenured teacher for a violation of the evaluation statutes or the collective bargaining agreement. It is within the exclusive authority of a school board to make decisions regarding teacher tenure inasmuch as the board may simply fail to rehire a teacher who, if rehired, would be in or beyond his or her third full term of employment in that school district. Although the department cannot order reinstatement resulting in an automatic grant of tenure, we hold that it can order temporary reinstatement without tenure of a nontenured teacher. *Danvers,* supra; *Bellmore-Merrick,* supra. As the *Danvers* court stated:

> The agreement to follow certain procedures preliminary to exercising its right to decide a tenure question, and to permit arbitration of a claim that it has failed to follow those procedures, does not impinge on a school committee's right to make the ultimate tenure decision. If a violation is found by the arbitrator, he may not grant tenure to the teacher, but he may fashion a remedy which falls short of intruding into the school committee's exclusive domain.

360 N.E.2d at 881.

■ The authority of a school board ultimately to make the decision not to rehire without regard to information resulting from evaluation procedures or the collective bargaining agreement does not justify the board's failure to follow the terms of those procedures or the agreement. See *Danvers,* supra, 360 N.E.2d at 882.

The purpose of the teacher evaluation statutes and the collective bargaining agreement is to provide feedback to new teachers so that they can attempt to improve themselves and eventually attain continuing contract status. The remedy of temporary reinstatement represents a vindication of that purpose. As the *Bellmore-Merrick* court noted:

> The temporary reinstatement awarded here does not eviscerate the public policy mandate that a board of education evaluate the requisite competence and merit of a teacher before the conferral of tenure .... The award merely requires that respondent follow procedures it has agreed to adopt in its decision-making process in the area of tenure.

383 N.Y.S.2d at 245–46, 347 N.E.2d at 606–07 (citation omitted).

We do not hold, however, that every violation of the teacher evaluation statutes or a collective bargaining agreement will mandate reinstatement. As pointed out in *Danvers*:

> Some violations of evaluation procedures may be trivial and not justify any relief. Not all violations of a teacher's rights, even constitutional rights, will justify reinstatement.

360 N.E.2d at 881–82 (citation omitted).

We conclude that a proper test in determining whether reinstatement is the proper remedy for a violation of the teacher evaluation statutes or the collective bargaining agreement is whether a grievant has shown that the violation substantially and directly impaired his or her ability to improve himself or herself and attain continuing contract status. See *Matter of Central School Dist. and Livingston Manor Teachers Ass'n,* 355 N.Y.S.2d 834 (App.Div.1974), affirmed with no opinion, 374 N.Y.S.2d 604, 337 N.E.2d 120 (1975). Moreover, as stated by the Supreme Judicial Court of Massachusetts in *West Bridgewater,* supra:

> We would hope that arbitrators would not award reinstatement of a teacher whose presence, on substantial grounds, would be inappropriate. See *School Comm. of Danvers v. Tyman,* supra, 372 Mass. 106, 360 N.E.2d 877. We leave to another day the possibility of a case, unlike the one before us, where, although contractual procedures for teacher evaluation were not followed, an award of reinstatement of a teacher should be vacated because the teacher's continued service would violate some fundamental principle concerning the management of a school system and a school committee's

right to decide who should teach in its system.

360 N.E.2d at 890.

Of the nineteen notes in his file, appellant had knowledge of the contents of fourteen. These fourteen notes therefore in no way affected his ability to improve himself and attain continuing contract status.

The five remaining notes referred to a problem concerning classroom noise, problems concerning appellant's style of coaching debate, and his wanting to change a Modern Problems class to an English Problems class. Although the problem of classroom noise itself is significant, the violation of the collective bargaining agreement becomes less significant when one considers that appellant himself must have been aware of the excessive noise in his classroom. For all practical purposes, then, he had notice of this problem and therefore had the ability to improve himself.

We consider the problem of appellant's style of coaching debate to be of a serious nature. Nevertheless, coaching debate apparently was not a significant portion of appellant's teaching duties. The Modern Problems class note dealt with a difference of opinion between appellant and the principal and contained no criticism of appellant's teaching methods. Specifically, it dealt with appellant's opinion that he was somewhat at a loss on what topics to cover in Modern Problems, a class in which he had no training or background. We conclude that appellant did not show that the violations substantially and directly impaired his ability to improve himself and attain continuing contract status.

We conclude, therefore, that the circuit court reached the right result in ordering only that appellant's personnel file be purged of the nineteen notes. Accordingly, we will not overturn that order even though the circuit court's reasons for entering it may not have been in accord with the holding expressed in this opinion. *House of Seagram, Inc. v. Assam Drug Co.*, 83 S.D. 320, 159 N.W.2d 210 (1968).

The judgment of the circuit court is affirmed.

All the Justices concur.