Mary JAGER, Plaintiff and Appellee,

v.

RAMONA BOARD OF EDUCATION, RAMONA SCHOOL DISTRICT, Defendant and Appellant.

No. 16450.

Supreme Court of South Dakota.

Considered on Briefs May 24, 1989.

Decided July 12, 1989.

Morgan, now our Senior Justice, and myself.

Karen E. Schreier of Hagen & Wilka, Sioux Falls, for plaintiff and appellee.

Rodney Freeman, Jr., of Churchill, Manolis, Freeman & Kludt, Huron, for defendant and appellant.

MORGAN, Justice.

The Board of Education of the Ramona School District (Board) appeals from a judgment rendered by the trial court which found that Board's decision to nonrenew Mary Jager's (Jager) teaching contract was an arbitrary, capricious decision and an abuse of discretion, and was clearly erroneous in light of the evidence. The trial court ordered reinstatement with full-time benefits and back pay, if any. We affirm.

Jager was employed by Board for six years and was a tenured full-time teacher. When first hired, her primary area of instruction was art in grades kindergarten through twelve. At Board's urging, Jager also received certification in social studies and junior high science and began teaching both these subjects as well. From the time of her employment in 1983 until the Spring of 1987, Jager received excellent ratings on her evaluations. No deficiencies were noted by any of her supervisors.

On two occasions during the 1986–87 school year, Jager used inappropriate language in front of students. Considering the weight Board seeks to place on these words, the context in which they were used becomes important.

In November 1986, Jager was working with a very introverted student who seldom looked up and never spoke in class. When this student turned in a diary episode that

Jager felt was "fantastic," she responded to the breakthrough by putting her arms around the student, hugging him and saying, "You worked your butt off."

The second incident occurred during January 1987, while Jager stood on a chair, trying to hang a mobile in a window. The students were being disruptive: moving in their seats and talking to one another. In an attempt to quiet the room, Jager turned and said, "Quit jacking off." She meant to say "Quit jacking around," a term frequently used by her family when she was growing up and at a Catholic school in Nebraska where she had taught. "Quit jacking around" has no sexual connotations. She accidentally used the term "Quit jacking off," which she said was a combination of "jacking around" and "goofing off." Immediately after the error, Jager apologized to the class. No exception was taken to this language until late May 1987. To understand the reason for this nearly five-month delay, we need to review the events surrounding one of Jager's junior high students and her parents.

During the Spring of 1987, a problem developed with one of Jager's students and her parents. The student failed to hand in a science project, claiming that her mother had thrown the booklet away. Jager met with the parents and proposed to orally examine the student on the material so their daughter could receive a grade. Initially, the parents agreed, but the father returned after the meeting and said that if his daughter received a grade on the booklet he'd go to the Board. The matter was discussed further between the father, the secondary principal and Jager, and it was agreed that the student would receive the grade of "C" for the booklet.

At this same time, Jager had a field trip to an environmental camp planned for her students. Two students were not able to attend, so Jager prepared materials for them to complete while the class was away. One of the students who could not attend the field trip was the same student who lost her science project. The two students completed the materials during the first day and did not come to school for the second day of classes. When Jager reviewed the assignments, she determined that the work had not been completed and was of "shoddy" quality. Jager spoke with the secondary principal and they agreed that the students should do the work over. Jager called the two students in that Friday afternoon and told them that she was not trying to ostracize them for not going to the environmental camp, but their work was not satisfactory and they would have to re-do the project.

That evening the parents of the student who lost the science project complained to Board, alleging for the first time that Jager used inappropriate language in the classroom, specifically the term "jacking off." Board immediately suspended Jager for the remainder of the school year. Board conducted an investigation and Board president Molstad testified that they did not find "that much wrongdoing."

However, during Board's investigation, Jager hired an attorney who recommended to her that she send a letter to Board and parents to try to rally community support. The attorney reviewed the letter and deleted some items. In the letter, Jager admitted using the terms "jacking off" and "butt," explained the context in which she used the words, and further stated why she believed the complaint was filed against her, making references that may have allowed the individual student to be identified.

On June 2, 1987, due to Jager's letter, a special Board meeting was held in executive session. Jager testified that during the meeting Board's attorney told her that if she apologized the Board would drop the matter. She testified further that she apologized to Board for her foul language, for offending anyone, for sending the letter, and for embarrassing Board. Once out of executive session, Jager's attorney apologized on her behalf to the public attending the Board meeting.

On July 1, 1987, Douglas Degen (Degen) was hired by Board as Superintendent. He testified that he thought the matter had not been properly handled. Jager was asked to attend the July 13, 1987, Board

meeting without her attorney. At that time, Board informed her that they were losing the students of the complaining parents because of her letter. After the July 13, 1987, meeting, Jager received a written reprimand from President Molstad. Degen gave Jager a second letter of reprimand on August 3, 1987. This letter also informed Jager that her letter to parents was a violation of her professional ethics because it revealed confidential information. Subsequently, Degen filed a complaint with the Professional Practices and Standards Commission (PPSC) of the South Dakota Department of Education and Cultural Affairs. In September 1987, Degen informed Jager that if she apologized to Board, he would withdraw the complaint. Jager felt she had sufficiently apologized, so decided not to do so again.

In December 1987, the PPSC proceeding was conducted. Both Jager and Board presented evidence. The PPSC found that Jager violated ARSD 24:08:03:01(8),[1] upon advice of counsel. It found further that Jager had apologized to Board and the public regarding both her use of inappropriate language and the issuance of the letter. In reaching this conclusion, it stated in part:

Superintendent Degen arriving very late to the situation reacted, in the Commission's opinion, too forcefully. Respondent Jager had already been suspended—a public humiliation—and had been required to apologize to the Board and to the public for both her language and the public letter. In the Commission's opinion, Superintendent Degen's placement of another letter of reprimand into Respondent's Jager's personnel file and the filing of this complaint with the Commission is an unwarranted reaction to the facts he faced.

Subsequently, the Secondary Principal, John Putnam (Putnam), evaluated Jager for the 1987–88 school year. This evaluation indicates satisfactory to exceptional instructional skills. He further noted that Jager has exceptional knowledge in the field of art and that she is a very creative teacher who uses a variety of activities and approaches in her classes. Putnam noted that Jager needed improvement due to her use of vulgar language in the classroom. However, Putnam recommended Jager be renewed.

In March 1988, Elementary Principal Diane Spilde (Spilde) also evaluated Jager, giving her a satisfactory score in five of ten categories. Spilde noted that Jager needed improvement in preparing daily assignments. In no category did Jager receive an "unsatisfactory" score. Spilde also recommended that Jager be renewed.

On March 15, 1988, Degen notified Jager that he was recommending nonrenewal of her teaching contract. His letter of March 21, 1988, set forth his reasons as follows:

Finally, the reasons for my intention to recommend nonrenewal to the Board of Education are delineated in the evaluations you received from Mr. Putnam and Mrs. Spilde on March 4, 1988 and March 11, 1988. Certainly, the events of last spring which the Professional Practices and Standards Commission reviewed, and for which you were reprimanded by that body, played a major role in my decision to make my recommendation for non-renewal to the Board of Education. In addition, there are a number of areas noted on your evaluation which Mrs. Spilde discussed with you, which indicate your performance is substandard. For details, please see the above mentioned evaluations. If you have any questions for me, please ask them at our scheduled conference.

Subsequently, Board notified Jager of its decision not to renew her contract. Jager was granted a formal hearing before the Board on April 11, 1988. At the conclusion of the hearing, Board moved into executive session. Board President Molstad testified that the Board voted to nonrenew Jager's contract because: "The Board found no evidence or—we did not find enough evi-

1. ARSD 24:08:03:01(8) provides in pertinent part that a teacher must "Keep in confidence information that has been obtained in the course of professional service, unless disclosure serves professional purposes or is required by law."

dence to overturn the recommendation of the administration, from the hearing."

Jager appealed to the circuit court and a trial de novo was held. Testimony established that another teacher, as well as Principal Putnam and Superintendent Degen, used vulgar language, some of which was sexually oriented, in front of students. Neither Putnam, Degen, nor the teacher had their use of vulgar language noted in evaluations, received written reprimands for inappropriate language, or were suspended while Board investigated the allegations. In Putnam's case this is true, despite parental complaints to Board. Furthermore, evidence showed that Degen violated the State confidentiality provisions, ARSD 24:08:03:01(8), and the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g (1982), on three separate occasions when he referred to special education students by name and referenced their programs in the presence of other parents. Despite complaints to Degen and Principal Spilde, no action of any kind was taken against Degen. Finally, testimony revealed that Board had no written policy to deal with either major or minor violations of the state and federal privacy acts or with the use of inappropriate language in front of students. The trial court found that Jager was terminated because of her refusal to give an apology to Board. Holding that Board acted arbitrarily, capriciously, abused its discretion and that its decision to nonrenew Jager's contract was clearly erroneous in light of the evidence, the trial court reinstated Jager with full-time benefits and back pay, if any.

On appeal, Board raises two issues:

1) Whether Board's decision to nonrenew Jager's teaching contract was arbitrary, capricious or an abuse of discretion and clearly erroneous; and

2) Whether Jager's proper remedy is reinstatement with full-time benefits and back pay or simply damages.

■ This court has long recognized that great deference is given to the good faith determinations of school boards on decisions whether or not to renew a teacher's contract. *Sutera v. Sully Buttes Bd.*

*of Educ.*, 351 N.W.2d 457 (S.D.1984); SDCL 13–8–39. However, this deference must be balanced with a teacher's right to "security in employment and to prevent dismissal of a teacher without cause." *Huffman v. Bd. of Ed. of Mobridge*, 265 N.W.2d 262, 266 (S.D.1978). To reconcile these competing interests, we adopted a limitation upon a school board's right not to renew a teaching contract. In *Mortweet v. Ethan Bd. of Ed.*, 90 S.D. 368, 241 N.W.2d 580 (1976) and *Collins v. Wakonda Ind. School Dist. No. 1*, 252 N.W.2d 646, 647 (S.D.1977), we required that the exercise of a board's discretion not to renew such employment not be exercised unreasonably, or arbitrarily, or be manifestly abused, and that the board's decision be supported by substantial evidence.

Pursuant to SDCL 13–46–1, an aggrieved teacher has a right to appeal a school board's decision not to renew to the circuit court. SDCL 13–46–6 permits a trial de novo. In *Mortweet*, 241 N.W.2d at 582–3, we held that the trial de novo is a hearing at which the trial court hears evidence for the purpose of determining whether the school board exercised its discretion unreasonably or arbitrarily or abused its discretion and whether its decision was supported by substantial evidence.

*Huffman*, 265 N.W.2d 262, offered additional guidance on the standard of review at the trial de novo: "We conclude that the trial court was free to make its own determination concerning the weight of the evidence and that we, in turn, may review the trial court's findings under the 'clearly erroneous test of SDCL 15–6–52(a)[.]' " *Id.* at 263. *Accord: Burke v. Lead–Deadwood Sch. Dist.*, 347 N.W.2d 343 (S.D.1984) (court's scope of review is limited to whether the trial court's findings are clearly erroneous).

■ In *Dale v. Board of Ed.*, 316 N.W.2d 108, 112 (S.D.1982), this court recognized that the trial court must enter findings of fact and conclusions of law in a case appealed under SDCL 13–46–4, since we must have the trial court's findings in order to apply the clearly erroneous test. When an appeal is taken pursuant to SDCL

13-46-6, the trial court does not have findings of fact from the school board to review. Therefore, the trial court is mandated to hear evidence, and weigh the testimony of the witnesses. The trial court must then determine whether substantial evidence supports the board's decision not to renew and must enter findings. To attack the trial court's findings on appeal to this court, Board must show they are clearly erroneous. In this case, Board has failed to sustain its burden.

■ Board apparently adopted Degen's reasons for nonrenewal of Jager's contract. In support of its decision not to renew Jager's contract, Board tries to paint a picture of Jager as a substandard teacher who uses inappropriate language in the presence of students. But it is apparent from the evidence at the trial de novo that Board applied policies on inappropriate language in front of students and breach of state and federal privacy laws differently to different individuals and that Jager was treated more harshly than other individuals.

The record shows that the school district did not have a written policy for handling use of inappropriate language in front of students or violations of state and federal privacy laws. Any de facto policy that may have existed was not uniformly applied. Another teacher, as well as Degen and Putnam, used inappropriate language, some of which was sexually oriented, in the presence of students. Neither of the administrators nor the offending teacher received comments in their evaluations, were issued reprimands as punishment, or endured suspension while the matters were investigated. Further, Degen violated state confidentiality provisions and the Family Educational Rights and Privacy Act § 1232g on three separate occasions by revealing the names of special education students and their programs to other parents. Jager, however, was the only one to be suspended and receive two written reprimands for the same privacy act violation.

Moreover, Board's allegations of instructional deficiencies are not supported by the record. Jager taught at this school for six years. During the first five years, she received excellent ratings and no deficiencies were noted on her evaluations. On her latest evaluation, she was found to "need improvement" only in the area of lesson preparation. At the end of her fifth year, her record shows she was suspended for inappropriate language in the classroom. Board's own investigation found that this was "not that much wrongdoing," and she was allowed to teach the next year. Both her supervising principals recommended renewal of her contract.

Yet, after being allowed to teach her sixth year, Jager is told that her instructional deficiencies of not preparing several lesson plans, her prior use of inappropriate language in the classroom and the circumstances growing out of this incident (her letter to parents and refusal to apologize a second time) were reason enough not to renew her contract. On these facts, we cannot say that the trial court was clearly erroneous in finding that Board acted unreasonably and treated Jager arbitrarily and capriciously.

As its second issue, Board contends that, should this court uphold the trial court's decision that it acted arbitrarily and capriciously in not renewing Jager's contract, the proper remedy is damages, not reinstatement and back pay. Jager argues that Board failed to raise the issue of proper remedy before the trial court; therefore, the issue is not preserved for appeal.

■ In *Burke*, 347 N.W.2d at 345, we spelled out exactly what a party must do to preserve an issue for appeal under SDCL 15-26A-8.

> We reassert that '[i]f a party does not present proposed findings of fact, make a motion for a new trial, or by some other apt motion, offer objection or exception indicating his disagreement with the court's findings, the sufficiency of the evidence to support the findings may not be questioned on appeal.' (Citations omitted.)

We find that Board met this standard. Board properly filed an objection to Jager's proposed findings of fact and conclusions

of law. Further, Board filed its own proposed findings of fact and conclusions of law. For the purposes of this appeal, we find that Board preserved the issue of appropriate remedy.

 Next we move to Board's argument that reinstatement is not a proper remedy. The gravamen of Board's complaint is that reinstatement of Jager is an order for specific performance of a personal services contract, prohibited by SDCL 21–9–2.[2] The linchpin of this argument is that breach of contract has occurred. If Board is incorrect as to this issue, all its arguments as to specific performance, mutuality of remedy, and proper use of mandamus and injunction are left behind in irrelevance.

Board is wrong.

The trial court's finding that Board's decision to nonrenew Jager's teaching contract was arbitrary, capricious or an abuse of discretion does not enforce a personal services contract. Instead, it places Jager back in the position she would have been in but for the Board's improper nonrenewal. SDCL 13–43–10 is helpful in this matter. It states in pertinent part:

Failure by the board or the superintendent to comply with the *provisions* and notices of §§ 13–43–9.1 *and 13–43–10 shall constitute an offer on the part of the board to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year.* (Emphasis added.)

We have always recognized that SDCL 13–43–9.1 and 13–43–10 embody both procedural rights as well as substantive rights. Referring to SDCL 13–43–10,[3] we stated in *Collins,* 252 N.W.2d at 647: "The purposes of the Continuing Contract Law are to provide teachers security in employment and prevent dismissal of a teacher without

cause. The employment protected is the right to continued employment within the school district in a teaching position for which the teacher is qualified."

SDCL 13–43–9.1 and 13–43–10 not only require Board to provide Jager with reasons for its intention not to renew her contract (procedural rights), but these reasons must not be arbitrary, capricious or an abuse of discretion as well (substantive rights). In this case, Board did not have valid reasons to nonrenew Jager's contract; therefore, it violated the substantive rights provisions of SDCL 13–43–9.1 and 13–43–10. As a result, Jager's contract for the 1988–89 school year was automatically renewed by statute. No breach of the 1988–89 contract was possible until Jager's first day of work. *See* Williston on Contracts, Third Edition § 1309. Board does not show any breach of contract by either party during the 1988–89 school year. This would have been the only period in which the trial court would have been required to order specific performance, answer questions of mutuality of remedy, or direct enforcement by means of injunction or mandamus. Since breach of contract never occurred, Board's arguments are not relevant.

Board's reliance on the hoary case of *Ind. Dist. No. 68 of Gregory v. Diebert,* 60 S.D. 424, 244 N.W. 656 (1932), to support its argument that boards of education have the power to breach teachers' contracts at will and dismiss them at anytime, leaving teachers with only the remedy of damages, is not well taken. We note first that *Diebert* involved a superintendent, not a tenured teacher. Second, the breach occurred during the contract year. More importantly, it was decided before passage of the Continuing Contract Law, SDCL 13–43–1 through SDCL 14–43–30. To the extent it conflicts with the proper procedures for

---

**2.** SDCL 21–9–2 provides, in part:
 The following obligation cannot be specifically enforced:
 (1) An obligation to render personal service;
 (2) An obligation to employ another in personal service[.]
 It is worth noting that this statute does not prohibit entering into personal service contracts. This is done constantly. The statute

only addresses what are proper remedies once there has been a breach *during* the life of the contract.

**3.** This court is aware that *Collins* dealt with the statute in effect as of May, 1975. Subsequent changes to statute have not modified the substantive rights owed Jager.

nonrenewal of tenured teachers' contracts, SDCL 13–43–9.1 and 13–43–10, and dismissal of teachers as provided in SDCL 13–43–15, it is overruled.

We note further that Board's tortured reading of the Continuing Contract Law, SDCL 13–43–1 through 13–43–30, would totally eviscerate the statute. If this court were to follow Board's reasoning, a school board could nonrenew a tenured teacher's contract for any reason, pay damages for one year's contract, and owe the person nothing else. Teacher job security would be meaningless. Tenure would become a hollow joke. As we have stated on several occasions, the purpose of the Continuing Contract Law is to prevent just such arbitrary terminations. *Fries v. Wessington School Dist. No. 2–4,* 307 N.W.2d 875, 877–78 (S.D.1981).

Finally, Board claims that this court has never explained whether reinstatement means to pay damages or to renew a contract. This is simply not the case. In *Sutera,* 351 N.W.2d 457, we upheld the reinstatement of a tenured teacher improperly nonrenewed during staff reductions. The court could have not been clearer. "Board is compelled by its own regulations to renew Sutera's contract rather than the contract of a probationary teacher." *Id.* at 459. Additionally, in *Fries,* 307 N.W.2d 875, a case ordering reinstatement of a nontenured teacher, we clarified our position by holding that reinstatement should not be made to a teacher whose presence on substantial grounds may not be appropriate. *Id.* at 879 (quoting *Matter of Central School Dist. and Livingston Manor Teachers Ass'n,* 44 A.D.2d 876, 355 N.Y. S.2d 834 (App.Div.1974) *aff'd no opinion,* 36 N.Y.2d 988, 374 N.Y.S.2d 604, 337 N.E.2d 120 (1975).

Nothing in the record demonstrates that Jager's presence would be inappropriate on substantial grounds. Jager's usage of inappropriate language occurred more than a year prior to Degen's recommendation that she be nonrenewed. The letter sent by Jager to parents and Board members was sent almost nine months prior to her nonrenewal. Neither of these actions were re-

peated. Spilde testified that Jager had made appropriate remedial efforts to improve her teaching after her evaluations. Both principals Jager worked for stated they would renew her contract. There is no evidence in the record to show substantial grounds as to why Jager's employment would violate some fundamental principle concerning the management of the school system and Board's right to decide who should teach in its system. Therefore, we do not find the trial court's order for reinstatement with full-time benefits and back pay, if any, is clearly erroneous.

We affirm.

All the Justices concur.