Kathleen "Katie" EIDE, Appellee,

v.

**OLDHAM–RAMONA SCHOOL
DISTRICT # 39–5,
Appellant.**

No. 18433.

Supreme Court of South Dakota.

Considered on Briefs Feb. 15, 1994.

Decided May 18, 1994.

Thomas M. Issenhuth, Chris S. Giles of Arneson, Issenhuth, Gienapp & Blair, Madison, for appellee.

Jerome B. Lammers of Lammers, Lammers, Kleibacker and Parent, Madison, for appellant.

HENDERSON, Justice.

*PROCEDURAL HISTORY/ISSUES*

Kathleen Eide (Eide) filed a grievance against the Oldham–Ramona School District # 39–5 (District) on June 19, 1991. Following an administrative hearing by the South Dakota Department of Labor (Department) on September 10, 1992, Findings of Fact and Conclusions of Law were issued in favor of Eide. Per Judgment entered on June 8, 1993, the trial court affirmed the decision and adopted the Department's findings and conclusions. District appeals these issues:

I.  Did the Department of Labor err in awarding Eide damages for the 1990–91 and 1991–92 school years and awarding Eide the Chapter 1 Mathematics position for 1992–93?

II. Did the circuit court err in awarding Eide the Chapter I Mathematics position for 1993–94 and affirming the Department of Labor?

As Eide was wrongly denied the Chapter 1 teaching position, we affirm and additionally

award her the disputed position for the school year immediately following release of this opinion. We affirm.

## FACTS

During the summer of 1990, Dalton Williams, superintendent of the Oldham–Ramona School District, filed an application so the District could receive a grant from the State to fund the necessary staff to instruct children with special education needs in "Chapter 1" classes. On page 5 of the application, Ed Buys was listed as the certified instructor who would teach Chapter 1 Mathematics "half-time" for the 1990–91 school year. District claims that Buys was merely offered an aide position; however, the salary listed was commensurate with a certified teacher, not an aide. ARSD 24:03:05:06 dictates that an "aide may only support the basic instruction of a classroom teacher and may not supplant the teacher. A teacher aide must be supervised by a certified person." The record further reveals that aides in the Oldham–Ramona School District are paid on an hourly, rather than salary, basis.

Eide, who began teaching for the District during the 1988–89 term and was certified to teach Chapter 1 Math, informed Diane Spilde, principal at Eide's elementary school, that she was interested in the Chapter 1 position should Buys reject it. Spilde replied that the position had already been promised to Paula Stevens. Soon thereafter, Buys did reject the offer, and Stevens got the job. Neither Eide nor Stevens had been listed on the Chapter 1 application as possibilities to teach this half-time class.

At the August 14, 1990, school board meeting, board member Jim Carmody expressed doubt about Stevens' certification to teach the class, so he phrased his motion to accept Stevens' signed contract as a "part-time Chapter 1 Aide." Stevens' contract was not on the form normally used for aides; rather, she signed a standard certified teacher contract with aide status noted thereon. Additionally, the salary specified on the contract was for a certified teacher, not an aide. For the same school year, Eide was hired as a "2/5" computer teacher at a salary of $6,436 and a kindergarten aide for 24 hours per week at $5.00 per hour.

After the school employees' salaries were published in the local newspaper, Eide's husband, Roger Eide, made inquiries at a November 1990 school board meeting. Roger testified that superintendent Williams assured him that Stevens was certified to teach Chapter 1 Math. But, Carmody later verified that Stevens was *not* certified for that subject.

In response, Williams filed an "Authority to Act" with the South Dakota Division of Education, Office of School Standards, seeking permission for Stevens to teach the course for the 1990–91 school year. According to the form Williams signed, Stevens was not qualified to teach Chapter 1 Mathematics. Nevertheless, the state superintendent of schools approved Stevens to finish out the year teaching a class she was not qualified to teach. However, District did not reduce her "certified" salary to "aide" wages.

Thereafter, Eide filed a grievance with District claiming she should have been chosen to teach the Chapter 1 class because she was the only certified teacher to express interest in the job after Buys turned down the position. District denied her claim contending that the position created was for an aide, not a certified teacher; therefore, Stevens' hiring was appropriate. Contrary to District's personnel policy manual, Eide's name was thereafter published in the minutes and newspaper as a grievant.

For the subsequent school year, 1991–92, Stevens signed an aide contract to be a Chapter 1 Mathematics aide, compensating her by the hour, rather than salary. However, the position was returned to "certified" status and awarded to a certified teacher for the 1992–93 term.

On review, the Department of Labor disagreed with District and held that Eide should have been the Chapter 1 teacher for 1990–91 and 1991–92. Eide was awarded damages and the teaching position for 1992–93. District was also ordered to apologize to Eide in the newspaper. District admitted to improperly publishing Eide's name.

## DECISION

■ When an administrative agency's decision is appealed to circuit court and the final judgment of that court is appealed to this Court, we make the same review made by the circuit court. *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353 (S.D.1992). If the issue is one of fact, the findings of the agency must be clearly erroneous to be reversed. Conclusions of Law are open to full review. *Permann v. Dept. of Labor*, 411 N.W.2d 113 (S.D.1987). Such review is made without any presumption that the circuit court's decision is correct. *Northwestern Bell v. PUC*, 467 N.W.2d 468, 469 (S.D.1991); SDCL 1–26–37. However, we give great weight to the findings made and inferences drawn by the Department on questions of fact. *Matter of SDDS, Inc.*, 472 N.W.2d 502 (S.D.1991); SDCL 1–26–36.

I. *Agency did not err in awarding Eide damages and the teaching position.*

■ According to Williams, the Chapter 1 Mathematics class was inceptually intended to be taught by an aide. This assertion conflicts with the very application he filed, on behalf of District, to obtain government funding for the course. Ed Buys was originally offered the half-time Chapter 1 Mathematics teaching position. His name, plus the fact that he was "certified" to teach the class, was listed on the application for Chapter 1 funding. Funding to pay the salary for a certified teacher, not an aide, was approved and distributed to the District.

Stevens, who was not qualified to teach Chapter 1 Mathematics, was offered the course only after certified teacher Buys declined to teach it. It is undisputed that the contract she signed, and that the school board approved, was a standard certified teacher contract. It was not to be used as an aide contract. The business manager made a mistake, claims the District. Stevens was also paid a certified teacher salary, a mistake justified by superintendent Williams as "inadvertent." In view of developing facts, such a statement rings hollow.

After Roger Eide publicly revealed the discrepancy with Stevens' pay, Williams filed an "Authority to Act," a request to permit an unqualified person to teach a class. If District truly intended the class to be taught by an aide, there was no need to file the form because Stevens was qualified to serve as an aide. The very request Williams signed states that Stevens was not qualified to teach the Chapter 1 Mathematics class.

When District realized its mistake, the position was clearly altered to keep Stevens employed for the 1991–92 school year. Yet, in 1992–93, this aide position suddenly became a certified teaching position and was awarded to some other certified teacher. Thus, Eide was bypassed for two more years.

Repeated actions by District indicate this class was to be taught by a certified teacher: application, potential instructors, funding, contract, salary and "Authority to Act." Both the Department and the trial court concluded that District had intended Chapter 1 Mathematics to be taught by a certified teacher for the 1990–91 school year. The credibility of witnesses, the weight to be accorded their testimony, and the weight of evidence is left to the factfinder. *Insurance Agents, Inc. v. Zimmerman*, 381 N.W.2d 218 (S.D.1986). Conflicts in the evidence are resolved in favor of the trier of fact. *Century 21 v. Hoffman*, 503 N.W.2d 861 (S.D.1993). In reviewing the findings, we are not definitely and firmly convinced that a mistake was made by the Department and hold that the Chapter 1 Mathematics class was to be taught by a certified teacher during the 1990–91 school year. *Wolff v. Royal Ins. Co. of America*, 472 N.W.2d 233 (S.D.1991); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970).

As noted by the Department's findings, District's policy manual states that only instructors certified in the area of the appropriate subject are to be employed. Exceptions are permitted in the event of an emergency, but only after the vacancy has been advertised in the newspaper or with the teacher placement bureau. District's policy further provides, "All vacancies shall be filled by the best qualified person available as determined by the administration and/or board of education."

Williams admitted that Eide was certified, qualified, and repeatedly expressed an interest in the Chapter 1 Mathematics job. No other qualified teacher expressed interest in this position. No one has asserted that a hiring emergency occurred nor was there publication of a job opening. It is certain that Stevens was not the most qualified person to teach the Chapter 1 Mathematics class. Eide was definitely more qualified. Although District has the authority to fill teaching positions, such authority does not justify the District's failure to follow its own personnel policies. *Fries v. Wessington School Dist. No. 2-4*, 307 N.W.2d 875, 879 (S.D.1981).

In its brief, District complains that this decision forces it to pay a salary it did not intend to pay. We strongly disagree. Per Williams testimony, the amount Eide would have received in the job was less than the "inadvertent" higher salary paid to Stevens. Also, District made no request for reimbursement when the "mistake" was noticed.

Finding that Eide was the most qualified person for the job, but was unjustly denied the teaching position for the 1990–91 and 1991–92 terms, the Department properly awarded her damages for the pay difference plus interest. Because the position was available for 1992–93, and because Eide was denied the employment despite her continued interest in it, the Department awarded Eide the position. Such an order, including the published apology, by the Department of Labor, is proper under *Fries*, 307 N.W.2d at 879.

In *Schaub v. Chamberlain Bd. of Educ.*, 339 N.W.2d 307, 310 (S.D.1983), we noted, "The decision of whether to re-hire a teacher for his or her third year of teaching is a critical one for all school boards, since that decision will determine whether the teacher in question is given the substantial rights of tenure." Eide had received 40% tenure without the disputed position and has continued to be employed by the District with excellent evaluations. No grant of tenure was awarded or implied by the agency or the trial court. Nor do we award or imply such.

II. *Circuit court properly awarded Eide the disputed teaching position for the upcoming school year.*

■ By affirming the Department's decision, Eide was entitled to teach the course for the 1992–93 school year. Unfortunately, the trial court's opinion was not released until May 14, 1993, thereby making it impossible for Eide to teach Chapter 1 Math during 1992–93.

Anticipating this delay, rather than permitting Eide to teach the course, District had previously obtained a stay from the circuit court. Thus, Eide was prevented from teaching Chapter 1 Mathematics or receiving damages until the circuit court affirmed the Department. When affirmed, District requested and received a conditional stay pending appeal before this Court. Hence, Eide will not teach during the 1993–94 term and, depending on the date of the release of this decision, may not get to teach in 1994–95 either unless the District's dogged attitude lessens to permit this admittedly qualified instructor to teach the course during the appellate process.

Nevertheless, the intent of the Department's order was to permit Eide to teach the class, for which she was qualified and unjustly denied, as soon as possible. Recognizing this intention, the circuit court ordered District to permit Eide to teach Chapter 1 Mathematics in the following school year, i.e. 1993–94. This does not constitute a modification and does not violate the precedent of *Div. of Human Rights v. Miller*, 349 N.W.2d 42 (S.D.1984) (if a circuit court modifies or reverses an agency's decision, it must enter Findings of Fact and Conclusions of Law); rather, it is a judgment completely in sync with the Department's ruling and necessary due to the stay requested and received by District. The same holds true now: Eide is to teach Chapter 1 Mathematics in the school year following the release of this decision. *See White Man v. Gunnick*, 473 N.W.2d 148 (S.D.1991) (damages continue to accrue during appellate process).

In *Jager v. Ramona Bd. of Educ.*, 444 N.W.2d 21 (S.D.1989), we affirmed the reinstatement of a tenured teacher as opposed to awarding damages. In both *Jager* and

*Fries, supra,* a teacher was denied a teaching position where the school board failed to properly follow its own policies. Had these school boards done so, the teacher would have been properly employed. Such is the situation here. Although these cites are not directly on point, the logic is sound and compatible with this case.

Finally, Eide has requested an award of attorney fees. An itemized statement, in the form of an affidavit, to support an award of $2,320.08 was filed at the appellate level. SDCL 15–17–38 lists those instances whereby fees can be awarded. An award of attorneys fees in this case cannot be substantiated under SDCL 15–17–38. She sets forth no authorities by way of cases or statutes to support her request. Therefore, we decline to award attorneys fees. *O'Connor v. King,* 479 N.W.2d 162 (S.D.1991); *Tri–State Auto Auction v. Ostroot,* 76 S.D. 356, 78 N.W.2d 468 (1956).

Affirmed.

MILLER, C.J., and WUEST, SABERS and AMUNDSON, JJ., concur.